**UNITED STATES of America**

v.

**Kristopher GRAY a/k/a "Slaya".**

**Criminal No. 07–10337–RCL.**

United States District Court,
D. Massachusetts.

Dec. 13, 2007.

Angel Kelley, United States Attorney's Office, John Joseph Moakley, Boston, MA, for United States of America.

Timothy G. Watkins, Federal Defender's Office District of Massachusetts, Boston, MA, for Kristopher Gray.

## ORDER ON DETENTION

ALEXANDER, United States Magistrate Judge.

The defendant, Kristopher Gray ("Gray") appeared before this Court for a detention hearing on November 1, 2007, pursuant to an indictment charging him with violations of (1) 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm and Ammunition) and (2) 18 U.S.C. § 924(d) and 28 U.S.C. 2461(c) (Criminal Forfeiture Allegation). At the hearing, the Government was represented by Assistant United States Attorneys Angel Kelley and John A. Wortmann, Jr.; Gray was represented by Attorney Timothy Watkins. The Government moved to detain Gray pursuant to 18 U.S.C. §§ 3142(f)(1)(D) and (E) (parole violation/ prior conviction), and (f)(2)(A) (serious risk of flight/ danger to the community). This Court must determine: 1) whether there is probable cause to believe Gray committed the offense with which he is charged, and 2) whether any condition or combination of conditions will reasonably assure Gray's appearance as required and the safety of any other person and the community.

For the reasons more fully articulated below, this Court is not persuaded by Gray's assertions, and thus orders that Gray be DETAINED because Gray poses a risk of flight that cannot be vitiated by any condition or combination of conditions of release. Moreover, the Court does not find that any conditions exist that would reasonably assure the safety of any other person and the community.

In that an indictment is extant, probable cause exists to believe that a defendant committed the offenses with which he is charged. *United States v. Vargas*, 804 F.2d 157, 162–63 (1st Cir.1986). This Court need therefore only determine whether any condition or combination of conditions will reasonably assure both the

appearance of Gray as required, and the safety of any other person and the community.

During the detention hearing, the Government offered the credible testimony of Special Agent Lisa Rudnicki, a ten-year veteran of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The Court was also aided in reaching its decision by a Pretrial Services Report and a Supplemental Pretrial Services Report. The credible testimony of Special Agent Rudnicki is incorporated in the facts as set forth below.

About 1:12 a.m. Saturday morning, September 29, 2007, officers of the Boston Police District C–11 Anti–Crime Unit arrested Gray for unlawfully carrying a firearm. The arrest occurred at 37 Hendry Street, an area targeted by police and the Boston Police Youth Violence Strike Force due to numerous past complaints by community residents of street-level drug activity and shots fired. For example, two days earlier, a young man had been shot in front of nearby 15 Hendry Street.

Sergeant Fitzgerald ("Fitzgerald") was positioned in an undisclosed location, from which he observed Gray in front of 37 Hendry Street placing his hands underneath his hooded sweatshirt and adjusting his waistband area multiple times. Fitzgerald stated in the police report, and Rudnicki testified at the detention hearing, that frequent adjustments of the waistband area were indicative of an armed individual who was conducting a "security adjustment" of a firearm secured in the waistband of their pants. Both officers base this belief on training provided by the ATF (a course entitled "Characteristics of Armed Gunmen"), their own experience and observations in the field, and Fitzger-

ald's personal knowledge of Gray. Fitzgerald also observed Gray walk with an unidentified individual around the left side of the building and into a wooded area, emerging less than a minute later, on three separate occasions. Fitzgerald stated in his Incident Report that this behavior, combined with his intimate knowledge of the history of this particular area, and his knowledge of the individuals known to frequent the area, led him to believe that Gray was conducting drug transactions and carrying a firearm in his waistband. Accordingly, he and several officers in the area decided to approach the group in front of 37 Henry Street for the purposes of conducting a threshold inquiry.

Upon observing the officers, the group (including Gray) fled on foot up both sides of the house. Gray, eluding police, ran directly into 37 Hendry Street, slamming the front door in the pursuing officers' faces and leaning into it to prevent their entry. The officers overpowered Gray and forced the door open. Gray then ran down the hall and began pounding on the door of Apartment # 1, cursing and demanding entry. As the door opened by unknown means, officer Grasso grabbed Gray's hooded sweatshirt, and with the aid of other officers, took Gray to the ground in the foyer of the apartment. Officer Ross observed a firearm slide across the floor and Gray's arm extend in a throwing motion. At the same time, officer Grasso observed Gray's arm extend in a throwing motion followed by the "thud" of a weighty object hitting the hardwood floor.[1] After a lengthy struggle, the officers employed "empty hand control tactics" and quickly secured Gray.

---

1. Upon further investigation, the Boston Police discovered that the recovered firearm was reported stolen to the Barnstable Police Department on August 6, 2004 by Robert McKnight of Osterville, Massachusetts.

Once Gray was secured, the lessee of the apartment, Elemenia Jackson, emerged from the bedroom to investigate what had transpired. She told officers that she did not know Gray and that he had no right to be in her apartment. After obtaining verbal consent and a signed Miranda waiver, the officers searched her apartment and found three large bags of marijuana under the couch cushions. No charges have been filed relating to this seized contraband.

■■■ This Court's calculus of detention is governed by 18 U.S.C. § 3142. Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e); *United States v. Montalvo–Murillo*, 495 U.S. 711, 716–17, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings." *United States v. DiGiacomo*, 746 F.Supp. 1176, 1180–81 (D.Mass.1990). The burden of persuasion remains with the Government on the question of flight risk. *See DiGiacomo*, 746 F.Supp. at 1181 (citing *United States v. Jessup*, 757 F.2d 378, 381–82 (1st Cir. 1985)).

■■■ The issue of whether the defendant poses a danger to the community has a different requirement. The Government must prove by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person and the community. *United States v. Chimurenga*, 760 F.2d 400 (2d Cir.1985). The meaning of clear and convincing evidence does not imply that the judge be "plumb sure" that there is no set of conditions that will protect the public, but the judge should be "pretty sure." *United States v. Gray*, 651 F.Supp. 432 (W.D.Ark.1987), *aff'd*, 855 F.2d 858 (8th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988). Nevertheless, because of the interference of pretrial detention with the "importan[t] and fundamental ... right" of liberty, *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), this Court will not make such a finding lightly.

■■ The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142(g). Pursuant to Section 3142(g), the Court first looks to the nature and circumstances of the offense charged against Gray.[2] While not a crime of violence, *see United States v. Silva*, 133 F.Supp.2d 104, 109–110 (D.Mass.2001), the unlawful possession of a firearm by a felon is a violation of the law and of obvious concern to this Court in any situation.[3]

---

**2.** Relating to this incident, Gray also faces charges in Dorchester District Court of (1) Assault and Battery with a dangerous Weapon, (2) Knowingly Receiving Stolen Property, (3) Resisting Arrest, (4) Carrying a Firearm and Ammunition, (5) Lack of a Firearm ID card, and (6) Possession of a Firearm without Permit.

**3.** This Court has consistently maintained that a violation of 18 U.S.C. Section 922(g), felon in possession, is not a crime of violence for

purposes of the Bail Reform Act. *See e.g., United States v. Silva*, 133 F.Supp.2d 104, 109 (D.Mass.2001); *United States v. Powell*, 813 F.Supp. 903, 905 n. 1 (D.Mass.1992). Since *Silva*, numerous other courts have further bolstered the rationale and support of this position, continuing to hold that mere possession of a firearm by a felon is not a crime of violence. *See e.g., United States v. Bowers*, 432 F.3d 518 (3rd Cir.2005) (recognizing broad array of non-violent circumstances behind felon in possession crimes, such that the

Second, the Court considers the weight of the evidence against the defendant. As noted previously, there is probable cause to believe that Gray committed the offense with which he is charged. *Vargas,* 804 F.2d at 162–63.

While this Court acknowledges the lack of fingerprints on the subject handgun, due to sweat, weather, and handling of the gun, very few identifiable latent prints are actually found on firearms. *United States v. Glover,* 479 F.3d 511, 518 (7th Cir.2007). As such, the absence of fingerprints is not inconsistent with a finding of guilt. *United States v. Matthews,* 498 F.3d 25, 31 (1st Cir.2007)[4]; *United States v. Paladino,* 401 F.3d 471, 478 (7th Cir.2005)(holding that the absence of fingerprints is irrelevant to the issue of whether someone possessed a gun).

The third inquiry, the history and characteristics of the defendant, are of paramount importance here. Gray has ties to the Dorchester community and his family. His family's presence in the Courtroom

crime is not one of violence); *United States v. Johnson,* 399 F.3d 1297, 1302 (11th Cir.2005) (analogizing *Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), while holding that mere possession of a firearm lacks inherent dangerousness or violence); *United States v. Twine,* 344 F.3d 987 (9th Cir.2003) (felon in possession not a crime of violence); *United States v. Lane,* 252 F.3d 905 (7th Cir.2001) (same). But see *United States v. Allen,* 409 F.Supp.2d 622 (D.Md.2006) (crime of felon in possession is a crime of violence). Drawing additional support from the other Circuits, and absent binding authority to the contrary, this Court continues its belief, articulated in *Silva,* that felon in possession is not a crime of violence.

However, this Court is well aware of, and has no dispute with, the recent amendment to 18 U.S.C. Section 3142(f), effective July 27, 2006, as a result of the Adam Walsh Child Protection and Safety Act. *See United States v. Lemoine,* 450 F.Supp.2d 99, 100 n. 2 (D.Me. 2006) (recognizing effect of statute in resolving division among the circuits over whether felon in possession constitutes a crime of violence for purposes of the Bail Reform Act). *See also United States v. Pereira,* 454 F.Supp.2d 40, 42 n. 2 (D.Mass.2006) (acknowledging unlawful possession of a firearm as grounds for detention hearing under Section 3142(f)(1)(e), without further discussion). Accordingly, though a crime involving a felon in possession is not a crime of violence, possession of a firearm is now a proper consideration for detention under 18 U.S.C. Section 3142(f)(1)(e).

4. In *Matthews,* the Court of Appeals affirmed a jury trial conviction of Appellant Larry Matthews for being a felon in possession of a firearm. The facts, strikingly similar to the instant case, are as follows. Four Boston police officers assigned to the Youth Violence Strike Force (same police unit as in instant case) were driving through the city's Roxbury section during the evening on August 11, 2003 in an unmarked police car. After Matthews saw the police vehicle, he was observed making "security adjustments" (same motions as Gray made in the instant case) to an object at his waist, and began to walk quickly away from the scene, soon accelerating into a run. Two of the officers gave chase, following Matthews into a building. Upon entering the building, one officer saw Matthews rise from a crouched position near an apartment door, then run out of the building. The officers then discovered a .22–caliber pistol under the doormat in front of that apartment. Matthews was later apprehended and placed under arrest. Like in the instant case, no fingerprints were found on the gun or ammunition in it. Matthews was subsequently charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

On appeal, Matthews argued that the evidence presented at trial did not connect him to the gun and ammunition, making the Government's case entirely circumstantial. The Court of Appeals disagreed, finding that though fingerprints were not found, "Given appellant's movements, his flight, his proximity to the weapon's location, the testimony that the gun was not under the mat earlier in the day, and the absence of contradictory evidence, a rational fact finder could conclude beyond a reasonable doubt that appellant possessed the firearm." *Matthews,* 498 F.3d at 31.

during his detention hearing is admirable, and evidence of those ties. If released pending trial, Gray asserts that he would live with his mother (eight blocks from Hendry street, where he has been arrested multiple times), and that his brother would help him secure employment as a night stocker at the Target department store near his mother's house. PTS verified, via a telephone conversation with Jacqueline Gray (Gray's mother) that he has lived "in and out" of her residence at 24 Leroy Street for the past two years, and that she "had little insight into the defendant's work history."[5] Notably, Gray lived with his mother when he committed many of the crimes for which he has been convicted, as well as probation violations. Additionally, although Gray claimed at the detention hearing that he was enrolled at Roxbury Community College for the Winter 2007 Semester, PTS reports that he owes tuition monies relating to the Spring 2007 Semester, and although his mother is "confident that he will seek to continue his education," she was unable to verify his enrollment. This Court is concerned that Gray's contentions regarding future employment and education are still questionable, and he will easily return to his past unlawful behavior.

Defense counsel also averred that, as a black man in a dangerous neighborhood, Gray was a victim of police racial profiling. While some of the offenses on Gray's record are minor (driving with a suspended license, insurance violation, wrong M/V plates, trespass), others are violent (assault and battery on a police officer, resisting arrest, high-speed car chases) and involve behavior that poses a serious threat to the community. Moreover, the facts of the instant case, coupled with oral argument do not implicate racial profiling.

The Government maintains, and this Court agrees, that Gray poses a risk of flight because he now faces a formidable maximum sentence of ten years imprisonment and $250,000 in fines, and has repeatedly shown complete disregard for the law both through his interactions with the police (e.g. telling an officer during a trespass arrest that he "would just be on that porch tomorrow") and multiple probation violations. Further, Gray's history of violent crime, his continued disregard for the conditions imposed upon him by the court, and the seriousness of the federal charges now against him, all lead to the conclusion that Gray must be detained pending trial.

This Court recognizes Gray's record of criminal convictions and his disregard for the judicial system through repeated violation of the terms of his probation. Most critically, Gray's criminal history includes multiple convictions, some of which are violent, and all of which pose a danger to the community in which he resides. They include violent crimes such as assault and battery on a police officer and multiple convictions for resisting arrest, as well as possession of marijuana. Gray admitted to Pretrial Services that he continues to use marijuana on a weekly basis. Drug trafficking in the Hendry Street area has been a source of continued strife for the law-abiding residents, who frequently complain to the police. Gray has also repeatedly violated terms of probation, indicating a disregard for the law and an inability to follow Court-mandated orders. The cumulative impact of these factors

---

5. Although defense counsel avers that Gray has never missed a court appearance, this claim is unsubstantiated. More importantly, it is overshadowed by the fact that Gray's repeated probation violations and continued criminal activity in the face of increasingly serious consequences indicate his continued disregard for our justice system, and the safety of the community it was designed to protect.

demonstrate a risk to the community posed by releasing the Gray.

After considering all evidence before the Court, and the presumption of 18 U.S.C. § 3142(e), the Court concludes by a preponderance of the evidence that KRISTOPHER GRAY poses a risk of flight, and by clear and convincing evidence that he poses a danger to the community that can not be vitiated by any condition or combination of conditions of release. Accordingly, the Court ORDERS him detained pending trial. Further, pursuant to 18 U.S.C. § 3142(I) it is ORDERED that:

1. The defendant be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The defendant be afforded reasonable opportunity for private consultation with his counsel; and

3. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by Gray's filing of a motion for revocation or amendment pursuant to 18 U.S.C. § 3145(b).

SO ORDERED.