UNITED STATES of America, Plaintiff,

v.

**Jorge Loredo ALONSO, Defendant.**

**Crim. No. 93–182 (RLA).**

United States District Court,
D. Puerto Rico.

Sept. 29, 1993.

**504**

Guillermo Gil, Sr. Trial Atty., Francisco Rebollo Casalduc, Trial Atty., U.S. Dept. of Justice, Guaynabo, PR, for plaintiff.

Maria H. Sandoval, Santurce, PR, for defendant.

### ORDER DENYING DEFENDANT'S PETITION FOR RELEASE

ACOSTA, District Judge.

Defendant is seeking review of the magistrate's detention order. The Court, having reviewed the record in this case, finds that the Government has met its burden of establishing a risk of flight and thus, defendant shall remain in custody.

## PROCEDURAL BACKGROUND

Defendant JORGE LOREDO ALONSO was arrested on June 17, 1993 and a detention hearing set for June 18, 1993. Upon the request of defendant's counsel, the hearing was continued for June 22, 1993. The following day, the magistrate issued his additional findings in support of the detention order. New counsel entered an appearance on defendant's behalf on July 27, 1993 and on August 5, 1993 requested modification of the detention order. On August 20, 1993 the magistrate issued an Order denying the petition for rehearing. Defendant appealed the magistrate's denial of release and thereafter supplemented the request.

On appeal, defendant argues that the magistrate erred in not affording him an opportunity to present evidence to controvert the prosecutor's proffer and also contends that the Government has not acquiesced to his release based on improper motives.

## DE NOVO REVIEW

■ Our role is to consider this matter *de novo, United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir.1985) but not necessarily to hold a second evidentiary hearing. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir.1987); *United States v. Phillips*, 732 F.Supp. 255, 258 (D.Mass 1990) (court "must make an independent review of the evidence, but need not conduct a *de novo* detention hearing"). The need for a hearing will depend on whether the defendant has placed relevant facts at issue, that is, "whether [defendant's] submissions ... were adequate to raise a disputed factual issue that was necessary to decide his motion...." *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990).

■ The reopening of a detention determination may be requested in order for the judicial office to consider additional evidence, provided that (1) the evidence was not previously available and (2) the evidence suggested is relevant to the determination of defendant's risk of flight or danger to the commu-

nity. 18 U.S.C. § 3142(f); *United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir.1991) (information must be "new" as well as "relevant to the rebuttable presumption").

## BURDEN OF PROOF

■ In this action, a rebuttable presumption of defendant's risk of flight and danger to the community was triggered pursuant to 18 U.S.C. § 3142(e), inasmuch as the drug-related charges filed against defendant carry a term of imprisonment of ten years or more.[1] Even though defendant has the burden of production, the presumption does not disappear simply because evidence is presented on his behalf. The presumption remains a factor to be taken into consideration by the judicial officer, with the Government continuing to have the burden of persuasion. *Dillon,* 938 F.2d at 1416 ("the rebutted presumption retains evidentiary weight."); *United States v. Pérez–Franco,* 839 F.2d 867, 870 (1st Cir.1988); *United States v. Palmer–Contreras,* 835 F.2d 15, 17–18 (1st Cir.1987); *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985).

> However, the presumption does not disappear even on the presentation of [evidence by the defendant]. Rather, the judge or magistrate continues to keep in mind, along with the other factors listed in § 3142(g), the fact found by Congress—that generally drug traffickers pose special risk of flight. As *Jessup* stated, "the magistrate or judge may still conclude that what is true in general is not true in the particular case before him."

*Pérez–Franco,* 867 F.2d at 870 (footnotes and citations omitted).

■ The Government must establish defendant's risk of flight by a preponderance of evidence. *United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir.1991).

In determining whether or not pretrial detention is warranted, the following factors should be considered: (1) "nature and circumstances of the offense charged"; (2) "weight of the evidence" against defendant;

(3) defendant's "family ties, employment, financial resources, length of residence in the community, community ties ... history relating to drug or alcohol abuse, criminal history ..." and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

■ The judicial officer has the discretion to receive the evidence by way of proffer; hearsay evidence is admissible. 18 U.S.C. § 3142(f); *Gaviria,* 828 F.2d at 669; *United States v. Acevedo–Ramos,* 755 F.2d 203, 204, 206 (1st Cir.1985).

## RISK OF FLIGHT

The statutory presumption assumes a high risk of flight among persons involved in illegal drug activities.

> Congress found that persons charged with major drug offenses often have the foreign ties and resources necessary to escape with ease to other countries; the imposition of a large bond is often ineffective in deterring flight. *Jessup,* 757 F.2d at 385 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 20, 23–24 (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News, pp. 23, 26, 27.) Congress therefore concluded that "flight to avoid prosecution is particularly high among persons charged with major offenses." *Id.*

*Pérez–Franco,* 839 F.2d at 869–70.

In *Palmer–Contreras* the Court of Appeals upheld a detention order based on risk of flight despite defendants' strong family ties, scarce financial resources, no prior drug-related criminal record and limited role as mules expressing the following concern:

> As we explained in *United States v. Jessup,* 757 F.2d 378, 380–86 (1st Cir.1985), this [flight] presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries. Forfeiture of even a large bond may be just a cost of

---

1. Given the vast amount of drugs involved, defendant faces up to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

doing business, and hence drug traffickers pose special flight risks.

*Palmer–Contreras,* 835 F.2d at 17.

The Court in *Pérez–Franco,* 839 F.2d at 870 noted that the defendants were not "mules" but "[r]ather, they sell heroin for profit. The connections necessary to secure over one kilogram of heroin may reflect the resources necessary to escape with ease to another jurisdiction."

Similarly, in a subsequent case, the Court of Appeals noted:

> Although the substantive evidence against appellant may not be as strong as the evidence against the defendants in *Palmer–Contreras,* the government has shown that appellant appears to be part of an organization with significant financial resources. Such an organization is the kind of " 'highly lucrative' drug operation[ ] at the center of congressional concern." *United States v. Jessup,* 757 f.2d at 386. Thus, appellant is one of the individuals at whom the presumption contained in § 3142(e) is aimed.

*Dillon,* 938 F.2d at 1416.

## NEW EVIDENCE

The "new evidence" submitted by defendant by way of affidavits and/or documents addresses findings included in the magistrate's original detention order and can be summarized as follows:

1. Evidence contesting the Government's allegation that defendant harbored a fugitive at his Miami apartment.

2. A statement by defendant's wife relating the circumstances surrounding his arrest at their residence and the negative impact his absence has had on his family.

3. A description, by a defendant in a separate case, of an apparent nervous attack suffered by ANTONIO COLL, a Government witness, which purportedly occurred during the grand jury proceedings in this action.

4. Copy of the forfeiture complaint which purportedly has restrained defendant's access to all his assets.

5. Stipulations by the prosecutor for the release of codefendants in this action.

6. Allegation that DEA Agent ENRIQUE NIEVES perjured himself during the grand jury investigation in an unrelated criminal action.

As we will further explain, even assuming that the aforementioned evidence proffered by defendant is new, we find that a hearing is not necessary to dispose of this issue based on the circumstances present in this case.

## GOVERNMENT'S EVIDENCE

█ Despite defendant's attempt to convince us otherwise, we find that the risk of flight is such that detention is warranted.

Defendant appears in counts ONE and FOUR of the indictment[2] charging a conspiracy to possess, import and distribute in excess of 1,000 kilograms of cocaine and more than 1,000 kilograms of marihuana.

At the detention hearing held before the magistrate on June 22, 1993 (docket No. 32), the Government moved by proffer without objection from the defendant.[3] According to the prosecutor's proffer, the evidence against defendant was gathered by DEA Agent ENRIQUE NIEVES[4] and other agents with the "cooperation of **six** informants that (sic) know Mr. Loredo personally[;] that have dealt personally with Mr. Loredo in the narcotics trafficking business." Tr. 5 (emphasis added). Defendant had been involved with "Mr. Sardiñas, the leader of the organization, around 1988 and during 1990 became [Mr. Sardiñas'] full partner and was in charge of all the local operations of the organization here in Puerto Rico." Tr. 5–6. The drug operation was alleged to have contacts with Colombia, Bolivia and Venezuela and its scheme was to import both marihuana and cocaine into the United States. Further, according to some of the informants, defendant

---

**2.** A Superseding Indictment was filed on September 16, 1993.

**3.** Defendant, although represented by counsel, failed to present any evidence either by proffer or

otherwise nor did he cross-examine the case agent.

**4.** NIEVES had been conducting the investigation since 1990.

claimed to have monies in other jurisdictions to allow him the opportunity to relocate in the event of an arrest.

Defendant's known resources in Puerto Rico are his residence, two recent luxury cars, approximately $200,000 in a Paine Webber account and $60,000 in a checking account. He also owns an apartment in Miami.

Lastly, some of the informants have indicated that "even at the time of his arrest Mr. Loredo was still active in the narcotics trafficking business and he was involved with a shipment of approximately 1,000 kilograms [of drugs] that he was due to transport into the United States." Tr. 8.

### NEW EVIDENCE

We find that the "new evidence" presented by defendant fails for the following reasons.

Assuming *arguendo* that defendant was not aware of the fugitive status of ALBERTO MAISONET SANTIAGO and that documentary evidence in support thereof was not readily available at the time the hearing was held, we find this information not relevant to our determination and will not take it into consideration for purposes of our ruling. The information regarding defendant's economic situation based on the pending forfeiture suit is not decisive in view of the other circumstances present in this case.

The allegations of disparate treatment regarding the Government's position with respect to the pretrial release of codefendants in these proceeding is similarly rejected. The circumstances pertinent to the other defendants are different and we find the attack on the Government's alleged evil motives speculative and unsubstantiated.

The remainder of defendant's submission is an attack upon the credibility of the witnesses against him. The investigation that led to defendant's indictment lasted three years. The information incriminating defendant was furnished by at least six persons who know him personally. Based on these circumstances, we find the evidence against defendant sufficiently trustworthy for purposes of this proceeding.

The charges in the indictment allege that since 1988 defendant was actively involved in the importation of massive amounts of drugs and that during the last three years he has played a major role in this illegal operation. This information places him precisely at the position the statutory presumption contemplates and consequently, in a high risk of flight category. Even after taking into consideration his family ties, length of residence and absence of a prior criminal record we find, on balance, the scale weighs heavily against release.

Based on the foregoing, we find that the Government has met its burden of presenting risk of flight by a preponderance of the evidence.

### CONDITIONS OF RELEASE

As to defendant's father's willingness to place his residence as security, given the magnitude of the operation, defendant's leadership role within the organization, his statements of having assets in foreign countries and of his intention to elude prosecution clearly refute the effectiveness of defendant's proposal. *See Dillon,* 938 F.2d at 1416–17 (defendant's offer to post his parent's home as security rejected since "it is reasonable to infer, for detention purposes, that the drug organization to which appellant belongs, should it choose to assist him in relocating, probably could absorb the loss of $200,000 worth of security").

Further, the electronic bracelet suggested by defendant is not a fail-fool proof system and has been circumvented previously in this as well as other districts. Given the totality of the circumstances of this case and what we perceive as a significant risk of flight, we find it inappropriate in defendant's situation.

### CONCLUSION

Based on the foregoing, we find that no condition or combination of conditions would ensure defendant's presence at trial. Therefore, defendant's appeal filed on September 8, 1993 (docket No. 74) supplemented on September 13, 1993 (docket No. 76) is hereby **DENIED.**

**508**

Accordingly, it is hereby ORDERED that JORGE LOREDO ALONSO shall remain in custody.

IT IS SO ORDERED.