**UNITED STATES of America,**
**Plaintiff,**

v.

**Giovanni TORRES–ROSARIO,**
**Defendant.**

**Criminal No. 07–248 (FAB).**

United States District Court,
D. Puerto Rico.

March 3, 2009.

---

**3.** Items 10 and 11 of Esso's Motion to Preclude, Docket 871 at 4 ("New Claims Nos. 10 & 11").

Joseph C. Laws, Rafael Andrade–Ravelo, Federal Public Defender's Office, Hato Rey, PR, PHV Christopher Adams, Atlanta, GA, for Defendant.

Julie B. Mosley, United States Attorney's Office, Vernon Benet Miles, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

BESOSA, District Judge.

Defendant Giovanni Torres–Rosario ("Mr. Torres" or "defendant") is charged with the following crimes connected to an alleged carjacking on May 12, 2007 for which the death penalty is a possible sentence: conspiracy to commit carjacking, aiding and abetting carjacking, and using a firearm in perpetuation of vehicle theft and murder.[1] At a detention hearing held pursuant to 18 U.S.C. § 3142(f) on October 3, 2007, Magistrate Judge Justo Arenas found Mr. Torres to be a flight risk and a danger to the community and ordered him incarcerated pending trial.

On November 8, 2008, Mr. Torres moved the Court to hold a *de novo* detention hearing "based on the fact that Giovanni Torres–Rosario is innocent." (*Docket Entry Text*, Docket No. 314) The Government opposed the motion (Docket No. 316).[2] At a status conference held on January 9, 2009[3] the Court heard oral arguments presented by both parties on the issue of whether to hold a hearing regarding Mr. Torres' bail status. Mr. Torres indicated that he could present the Court with new information casting doubt on the evidence linking him to the carjacking, and which would thus support modification of the Magistrate Judge's original detention order. The Court agreed to hear the new evidence and, accordingly, on February 18, 2009, a hearing was held to consider, *de novo*, Mr. Torres' detention status.

Mr. Torres now moves this Court to release him due to new evidence presented during the February 18, 2009 hearing (Docket No. 333). The government moves the Court to continue the hearing on Mr. Torres' motion for release so that it may present a witness "who can potentially identify" Mr. Torres in connection with the alleged carjacking incident (Docket No. 334). Mr. Torres filed a response objecting to the government's request (Docket No. 340) and reiterating his petition for release pending trial. The government responded again on March 2, 2009, once more requesting that the hearing be continued because it "has sufficient evidence that Torres Rosario was involved in the charged carjacking and related offenses," and that Mr. Torres "remains a danger to the community and a flight risk." (Docket No. 345)

For the following reasons, the Court **DENIES** the government's motion to continue the detention hearing and **GRANTS** the defendant's motion to modify the magistrate judge's detention order.

## I. Legal Standards

### A. The Bail Reform Act and the Rebuttable Presumption

The Bail Reform Act, 18 U.S.C. § 3142, governs the procedural and substantive rules for pretrial detention of defendants. Where there is probable cause to believe that a defendant committed certain crimes pursuant to 18 U.S.C. § 3142(e), including those carrying the death penalty as a possible sentence, a rebuttable presumption of dangerousness arises that no conditions of release "will

---

1. Specifically, Mr. Torres was indicted for violating 18 U.S.C. § 2119(3), 18 U.S.C. § 2119(2), and 18 U.S.C. § 924(c). *See* (*Superseding Indictment*, Docket No. 51); (*United States' Response in Opposition to Motion for Review of Detention Order and De Noco Detention Hearing*, Docket No. 316).

2. On December 31, 2008, Mr. Torres filed a second motion for a *de novo* hearing regarding his bail status (Docket No. 323), and the government again filed a response in opposition to the hearing (Docket No. 325).

3. Incorrectly reported as January 9, 2008 in the minute entry for proceedings in Docket Number 328.

reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *See United States v. O'Brien,* 895 F.2d 810, 813 (1st Cir.1990).

■ To rebut the presumption of dangerousness, the defendant must produce "some evidence" to the contrary. *O'Brien,* 895 F.2d at 815 (citing *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985) (overruled on other grounds)); *United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991) (internal citations omitted). Nevertheless, the presumption remains in effect even when a defendant brings evidence forward in rebuttal. The evidence brought by the defendant merely serves as evidentiary weight to be considered by the court when determining the defendant's bail status; the government retains the burden throughout the inquiry to prove that no release conditions can reasonably assure the defendant's appearance. *Id.; United States v. Palmer–Contreras,* 835 F.2d 15, 18 (1st Cir.1987) (*per curiam* ).[4]

### B. Standard of Review for a Detention Order

When a magistrate judge's pretrial detention order is contested, a district court considers the matter *de novo* under the guidelines set forth by 18 U.S.C. § 3142. *See United States v. Alonso,* 832 F.Supp. 503, 504 (D.P.R.1993). A court may reconsider a detention order at any time prior to trial if the judicial officer finds there to be information previously unavailable and finds that the new information bears on the determination of flight risk and danger to society. 18 U.S.C. § 3142(f)(2)(B); *United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir.1991).

To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the "weight of evidence" against the defendant; (3) the history and characteristics of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by [the defendant's] release." 18 U.S.C. § 3142(g).

### II. The Magistrate Judge's Detention Order

The magistrate judge's detention order consists of a template form commonly used by judicial officers in the District of Puerto Rico ("Order of Detention Pending Trial") that offers pre-scripted options to be checked or "Xed" when making the bail determination and a few open spaces for additional comments. The only explanation given by the magistrate judge for Mr. Torres' detention are the "X's" entered next to the options the magistrate judge deemed applicable to Mr. Torres and a single statement in an area of the template form left open for additional comment that "The Court adopts the recommendation in the pretrial report." *Id.* The order fails to include any meaningful "written statement of the reasons for the detention" as required under 18 U.S.C. § 3142(i). *See United States v. Moss,* 887 F.2d 333, 338 (1st Cir.1989).

Not being able to discern the magistrate judge's rationale for detention on the face of the order, this Court reviewed the transcript of the original October 3, 2007 detention hearing itself as well the pretrial report for Mr. Torres that was adopted by

---

**4.** We apply a *preponderance of the evidence* standard to the proof pertaining to flight risk, but *clear and convincing evidence* must be introduced to support the conclusion that a defendant's detainment prior to trial is necessary to ensure the safety of the community. *United States v. Patriarca,* 948 F.2d 789, 792–93 (1st Cir.1991).

the magistrate judge. As noted by the time notations in the hearing transcript, the entire proceeding lasted a mere two minutes (from 9:15 a.m. to 9:17 a.m.). *See* (*Transcript of Arraignment and Bail Hearing*, Docket No. 343) The only exchange during the detention hearing that actually regarded Mr. Torres' detention went as follows:

> THE COURT: Have you looked at the Pretrial Report?
>
> MR. ANDRADE–RAVELO (Mr. Torres' attorney): I have, Judge.
>
> THE COURT: What is your position?
>
> MR. ANDRADE–RAVELO: Only that the Court consider posting a bond, with the parent's house, if they're willing to post the bond, Judge. Perhaps with conditions of house imprisonment, or house arrest, with an electronic monitor.
>
> THE COURT: I consider him a risk of flight and danger to the community. He will be detained pending trial. Is there anything else?
>
> MR. ANDRADE–RAVELO: Nothing from us, Judge.

*Id. See also, Minute Entry for proceedings*, Docket No. 61.

The pretrial report for Mr. Torres contained basic information regarding Mr. Torres' residence and family ties, employment and financial history, health, and prior criminal record. Despite finding Mr. Torres to have "verifiable ties to this district," the Pretrial Services Division found Mr. Torres to be a risk of flight/nonappearance due to his current probationary status at the state level for cases relating to controlled substances violation, and his preliminary hearing pending for four weapons-related law violations at the state level.

Based on Mr. Torres' criminal history *and* the instant charge as alleged, the Pretrial Services Division also considered Mr. Torres to be a danger to the community.

## III. De Novo Review of Mr. Torres' Bail Status

As noted above, the Bail Reform Act under 18 U.S.C. § 3142(g) governs this Court in making its independent decision about whether to modify the conditions of Mr. Torres' pretrial detention. In aid of its decision, the Court has reviewed all motions and briefs pertaining to Mr. Torres' bail status as well as the following materials and testimony: (1) the original criminal complaint (Docket No. 1) as well as the attached affidavit of FBI Special Agent Richard Gilbert; (2) the superseding indictment (Docket No. 51); (3) the transcript of the original October 3, 2008 detention hearing before the magistrate judge (Docket No. 343); (4) the pretrial report adopted in the magistrate judge's detention order; (5) the magistrate judge's detention order itself (Docket No. 62) and the related minute entries in the docket (Docket No. 61); and (6) the new evidence brought forth by Mr. Torres in the *de novo* detention hearing on February 18, 2009.

### A. Factors 1 and 2: Nature and Circumstances of the Offense and Weight of Evidence

▮ The "nature of the charge" against Mr. Torres—a charge of a violent crime giving rise to a possible sentence of death—would itself typically weigh against Mr. Torres' release. *United States v. Lemoine*, 450 F.Supp.2d 99, 100 (D.Me. 2006); *United States v. Samuels*, 436 F.Supp.2d 280, 286 (D.Mass.2006). The mere existence of a grand jury indictment for such a serious crime is sufficient to establish probable cause for purposes of triggering the rebuttable presumption of dangerousness in section 3242(e). *United States v. Vargas*, 804 F.2d 157, 163 (1st Cir.1986). Because Mr. Torres is charged in such an indictment, the magistrate judge could certainly have found probable

cause sufficient to trigger the rebuttal presumption of dangerousness under 18 U.S.C. § 3142(e) based on his inference from the existence of the indictment. The "weight of evidence" against Mr. Torres in the first place is weak. FBI Special Agent Richard Gilbert's affidavit attached to the initial criminal complaint against Mr. Torres merely cites that "witness interviews and source information [led] to the positive identification" of Mr. Torres. (Docket No. 1, Attachment 1) The magistrate judge's detention order contains no reference to the government's evidence, much less to the strength or weight of that evidence, as is demanded by the statutory factors in 18 U.S.C. § 3142(g). In short, prior to the *de novo* hearing held by this Court on February 18, the only evidence entered into the record for purposes of bail status was an allusion to a positive identification of Mr. Torres by a witness.[5]

In his first motion requesting a *de novo* detention hearing, Mr. Torres argued that he could present evidence rebutting the presumption of his dangerousness. He argued that he was arrested based upon the identification of a single eyewitness who was a passenger in the car at issue in the alleged carjacking.[6] (Docket No. 314, ¶ 4) Mr. Torres contended that the eyewitness is unreliable for two reasons: first, the eyewitness did not make the identification of Mr. Torres until September 19, 2007, 130 days after the incident; second, the eyewitness described the assailant alleged by the government to be Mr. Torres as

standing between 6 feet, 2 inches and 6 feet, 5 inches tall, while Mr. Torres is only 5 feet, 7 inches tall. *Id.* Mr. Torres also pointed to a press release issued by the FBI and the U.S. Attorneys' office stating that the unnamed suspect is between 6'2" and 6'5" in height. (*Id.*, Exhibit 1) Mr. Torres requested that he be able to present the results of a height analysis conducted by an expert in video and photographic forensics.

Opposing the *de novo* hearing and presentation of the expert's height analysis, the government argued that there was no indication that the eyewitness' identification was based exclusively on the assailant's height. (Docket No. 316) The government also cited case law holding that an eyewitness's inability to articulate a description of an individual "does not necessarily undermine the accuracy of a later identification." *Id.* (Citing *Gilday v. Callahan*, 59 F.3d 257 (1st Cir.1995)).[7]

Because the Court determined that the information proffered by the defendant was not available at the time of the first detention hearing and the information was relevant to the rebuttable presumption, both required for a reopening of the detention hearing by 18 U.S.C. § 3142(f), on January 15, 2009, the Court scheduled a *de novo* detention hearing for February 18, 2009.

At the *de novo* detention hearing, Mr. Torres introduced expert testimony from Mr. Gerald B. Richards, qualified as an

---

5. In response to the government's arguments (Docket No. 316) about how this Court should weigh the reliability of identification evidence, the Court notes that it does not analyze the credibility or the sufficiency of the evidence as they relate to potential for conviction, but only analyses them as they relate to the factors, particularly the "weight of evidence" factor, enumerated by the governing statute.

6. In its opposition to defendant's motion for a *de novo* detention hearing, the government seems to agree with the Mr. Torres' description of what evidence led to the arrest, stating, "The identification of defendant was apparently based on the eyewitness' testimony." (Docket No. 316.)

7. The Court regrets having to search through the cited case for the quoted text due to the government's improper page citation in the motion.

expert in forensic photography and video analysis.[8] Mr. Richards conducted an analysis comparing the heights of the suspect alleged by the government to be Mr. Torres and Mr. Torres himself. To conduct his height analysis, Mr. Richards used a video recording from the Subway Restaurant security camera that captured scenes from the incident on May 12, 2007, including footage of the suspect that the government alleges is Mr. Torres. Mr. Richards selected the frame from the Subway video showing the suspect at his tallest height, then, based on an extensive photograph and video analysis process,[9] came to the conclusion that, even accounting for error and other natural variables, the suspect in the video could not be shorter than 5 feet, 11 and 3/4 inches in height. Mr. Richards then measured Mr. Torres himself and determined, also accounting for error and other natural variables, that Mr. Torres could not stand taller than 5 feet, 7 and 1/2 inches tall. Mr. Richards thus concluded in his professional opinion and experience that it is "highly, highly unlikely" that Mr. Torres is the same person as the suspect alleged by the government to be Mr. Torres.

The government conducted a very brief cross-examination of Mr. Richards, and then introduced Mr. Juan Miranda–Montalvo ("Mr. Miranda"), the above-mentioned eyewitness who had identified Mr. Torres as one of the assailants in the alleged carjacking incident. Mr. Miranda stated that he identified Mr. Torres on September 19, 2007, more than four months following the date of the incident, when presented with a six-photo array. During the hearing, Mr. Miranda was given the photo array from which he identified Mr. Torres to look at and then confirm the array as the same one he used to make the identification. After being shown the 6–photo array, Mr. Miranda was asked to identify his assailant, if present, in the courtroom. Mr. Miranda was unable to identify Mr. Torres as the person he recalled being involved, despite Mr. Torres' presence in the courtroom, and despite the fact that Mr. Torres was the only person in the courtroom dressed in an inmate jumpsuit and that he was sitting at the defense counsel table next to his attorneys.

As noted previously, a defendant's evidence brought forth to rebut the presumption against him does not eliminate that presumption, but operates as evidentiary weight for the Court's consideration while the government must constantly maintain its burden of persuasion. *See Dillon*, 938 F.2d at 1416. In the wake of the *de novo* detention hearing, the evidentiary weight has tipped almost completely to the defendant's side of the scale: there remains little evidence supporting the government's case against Mr. Torres, and what evidence there is on the record is mainly exculpatory. Meanwhile, the government brought forward no additional evidence linking Mr. Torres to the crime for which he now faces serious charges, and the evidence it attempted to bring—the testimony of an eyewitness—succeeded only in undermining the credibility of the only evidence it has brought in support of its case against Mr. Torres' release throughout these proceedings. The defense, however, has come forward with new information calling into question the very indictment charging Mr. Torres. The introduction of highly exculpatory evidence into the rec-

---

8. At the hearing, the government stipulated to Mr. Richards's qualifications.

9. Mr. Richards explained to the Court in depth the methodology he used and the ratio- nale for his conclusions. Because there is no dispute as to his qualifications as an expert in the area about which he testified, however, there is no need to recount here each detail of his lengthy explanation.

ord shakes the foundations of the very serious charge that created the rebuttable presumption in the first place and pushes both the "nature and circumstance of offense charged" and "weight of evidence" factors strongly in favor of release.[10]

## B. Factor 3: History and Characteristics of the Defendant

The Bail Reform Act directs the Court to consider numerous elements relating to Mr. Torres' history and characteristics, such as his criminal history, employment, health, residence, and family ties. Ostensibly, these inquiries are targeted at establishing the defendant's likelihood to flee. The language introducing the list of statutory factors under 18 U.S.C. § 3142(g) to be considered by a Court when reviewing a detention order, however, refers both to reasonably assuring appearance *and* safety. There is therefore "an inherent ambiguity as to whether each factor listed is declared to be relevant to both appearance and safety." *United States v. Shea*, 749 F.Supp. 1162, 1164–65 (D.Mass.1990).

While certain statutory review factors, such as the "nature of the crime" and "weight of evidence" explored above, may naturally implicate relevance to an inquiry of safety rather than one of appearance, numerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight. *See, e.g., United States v. Pierce*, 107 F.Supp.2d 126, 128 (D.Mass.2000). Facing the death penalty could surely create a motive to flee. Eliminating or reducing the possibility would therefore mitigate the risk. Because the evidence presented by Mr. Torres calls into question the very basis for the charge against him, this Court feels the risk of his flight has substantially decreased.[11]

Importantly, the only rationale given by the magistrate judge for concluding that Mr. Torres poses a flight risk appears inextricably linked with Mr. Torres' indictment for a serious charge, one in which the death penalty is a possible sentence. The pretrial report on which the magistrate judge's flight risk determination rests concluded Mr. Torres to be a flight risk because he was serving out three years of probation for a state level controlled substances violation. There is no indication from the pretrial report that Mr. Torres violated any terms of his release. Further, at the time of his arrest Mr. Torres had a preliminary hearing pending for state level weapons violations. There is no indication that Mr. Torres failed to appear at any court hearings in relation to any of these charges. Likewise, the pretrial report concluded that, based on Mr. Torres' criminal history, and the instant charge as alleged, Mr. Torres is considered a danger to the community. The logical conclusion is that Mr. Torres was deemed to be both a flight risk and a danger to the community because of the particular combination of his arrest on this instant charge and his criminal history.

Without this arrest for such a serious charge, Mr. Torres' pretrial report contains information about Mr. Torres' history and character that, because it is so lacking in detail and sparse, leans only marginally

---

10. The evidence against Mr. Torres has been irrevocably tarnished for the purposes of the detention decision both by the expert's testimony and the inability of the single eyewitness to identify Mr. Torres in circumstances where Mr. Torres' identity as a defendant was patently obvious.

11. Indeed, defense counsel stated at multiple points prior to the *de novo* hearing that Mr. Torres will seek dismissal of the indictment against him following his presentation of the exculpatory evidence. Following the *de novo* hearing, in its motion to release Mr. Torres, defense counsel also declared Mr. Torres' intention to seek dismissal.

in favor of his release. According to the report, Mr. Torres was born in Caguas, Puerto Rico, and he appears to maintain his residence here. His last known address was in Juncos, Puerto Rico, a fact confirmed by his parents, Mrs. Carmen Iris Rosario and Mr. Juan Torres, who themselves live in Juncos. Mr. Torres claims also to have two daughters, ages five and two, who live in Juncos as well. (Docket No. 314) Mr. Torres' parents have made themselves available to pretrial services and indicated that they are willing to assist their son in every way at their disposal. They have also offered to post their house as secured bail, worth $85,000 with about $78,000 in equity (at the time of the pretrial report (September 24, 2007)). In his motion for release, Mr. Torres states that his parents are willing to be qualified by pretrial services as third party custodians to insure his compliance with any release conditions which may be set.

In sum, despite his criminal history, Mr. Torres has verified ties to the community and to a family willing to assist in his compliance with release conditions. There is no evidence, as has been shown in other detention review cases, that Mr. Torres has access to large quantities of cash that would aid his release, that he has family or friends outside of Puerto Rico, that he has a history of violating release conditions, or that he is a drug user. *See e.g. United States v. Alonso,* 832 F.Supp. 503, 506 (D.P.R.1993) (citing Congressional findings that persons charged with major drug offenses often have the foreign ties and resources necessary to escape with ease to other countries) (internal citations omitted). Neither is there any evidence relating to a retributive tendency or violent reputation (*see e.g. Lemoine,* 450 F.Supp.2d at 103–4; *United States v. Gray,* 529 F.Supp.2d 177, 182 (D.Mass. 2007)) or any other testimony from anyone who knows Mr. Torres that would provoke speculation about either his potential to flee or his potential to be a danger to his community. All of these elements therefore weigh slightly in Mr. Torres' favor.

## C. Factor 4: The Nature and Seriousness of the Danger Posed by Defendant's Release

■ The safety of the community can be reasonably assured without being absolutely guaranteed. *United States v. Tortora,* 922 F.2d 880, 884 (1st Cir.1990) (internal citations omitted). Although there is a witness in this case, such that the evidence is not purely documentary, the government has produced no evidence bearing on any specific danger posed by the defendant to that witness. The government has introduced no evidence alleging that Mr. Torres would pose a particular threat to the witness or anyone else. The magistrate judge's detention order did not select the pre-scripted choice stating that "there is a serious risk that the defendant will endanger the safety of another person or the community," and contains no other indication that the defendant poses a danger to a person or the community.

On the other hand, Mr. Torres' parents have represented their willingness to act as custodians in an in-home incarceration agreement and to post their home as a surety. Mr. Torres has offered to wear a monitoring device.

It is the Court's opinion, however, that these conditions alone would not be sufficient given that the charges against Mr. Torres remain active, despite the weak evidence supporting them and the willingness of Mr. Torres' parents to help Mr. Torres comply with any condition of his release. Though the Court need not be "plumb sure" that no set of conditions will protect the public, it ought to be "pretty sure." *United States v. Gray,* 529 F.Supp.2d 177, 180 (D.Mass.2007) (internal citations and quotations omitted). To be

pretty sure that the no harm will come from Mr. Torres's release, the Court orders highly stringent release conditions as stated at the conclusion of this opinion to which Mr. Torres must comply absolutely and completely. And deviation from the Court's order of release conditions will result in an immediate revocation of Mr. Torres's liberty.

■ The Court does not take lightly a situation in which liberty rights are at issue and in which the safety of the community must be addressed. Determining what constitutes adequate detention is a "factbound" inquiry in which "no two defendants are likely to have the same pedigree or to occupy the same position." *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir.1990). "Detention determinations must be made individually and, in the final analysis, must be based on evidence which is before the court regarding the particular defendant." *Id.* Under 18 U.S.C. § 3145(a), a motion for review of a release order "shall be determined promptly." 18 U.S.C. § 3145(b).

Mr. Torres' case is unusual. Typically, new evidence arises in rebuttal to a presumption favoring detention that relates to a defendant's character, bearing on either risk or dangerousness. Here, the evidence presented by Mr. Torres bears on his innocence, something we do not directly consider at this stage of the proceedings. Mr. Torres is a defendant in a case, however, where he faces extremely serious charges—charges which themselves create a presumption of risk—yet charges which Mr. Torres has shown are weakly substantiated. In such a case, casting doubt on the charge itself throws shadows in the direction of the entire detention order, given that the detention order was so highly grounded on that charge. In these unusual circumstances, where the defendant's rebuttal evidence in fact does cast doubt on the basis for his charge, the govern-

ment's burden to maintain a level of proof that can persuade the Court of the need to detain the defendant is especially important.

Unfortunately neither party spoke directly to the statutory factors governing this Court's decision during the *de novo* hearing itself. Neither did the parties frame their evidence as specifically falling under the umbrella of any of those factors or as related to flight, safety or both. Nevertheless, the exculpatory evidence introduced by Mr. Torres at the *de novo* hearing was intended, as indicated by his prior motions, to establish both his innocence and rebut the presumption of his being dangerous and flight risk. Applying the factors to the evidence shows that the expert's testimony most clearly addresses the "weight of evidence" factor, yet, as explained above, it influenced many other factors governing detention status as well, including Mr. Torres' incentive not to appear.

Although the government addressed the statutory factors of review in its oppositions to the *de novo* requests, it neglected to direct specific evidence during the *de novo* hearing to the question of whether Mr. Torres presented a risk of flight or a danger to the community. With very little evidence to begin with, and very little in the record from the parties arguing directly to the statute governing the Court's *de novo* detention decision, the weight of the expert's testimony and the eyewitness' inability to identify the defendant grows heavier.

It is the view of this Court that the government's burden to show that no condition or combination of conditions will reasonably assure Mr. Torres' appearance and the safety of the community has not been met. After considering all of the statutory factors set forth by 18 U.S.C. § 3142(g) and applying them to the record,

the Court believes the safety of the community can be reasonably assured should Mr. Torres be released according to the conditions set forth below.

## IV. Modified Conditions of Release

Taking into consideration all of the above, the Court orders the following conditions of release:

- Mr. Torres shall be released into *home incarceration* under the custody of his parents, Juan Torres and Carmen Iris Rosario at their home, currently reported as P–5 Reparto Valenciano, Street # 3, Juncos, Puerto Rico 00777. The Probation Officer shall interview and evaluate Mr. Torres' parents to insure they are qualified to act as his custodians. "Home incarceration" means that Mr. Torres will remain at his parents' house and will be at all times required to wear and abide by an electric monitoring or other location verification system, paid for as determined by the United States Pretrial Services Office. Should Mr. Torres want to attend church or other religious service, he may do so only if he obtains a letter from a pastor, priest or other certified clergy member indicating that he plans to attend services at a particular church. Should Mr. Torres obtain such a letter, he must present the letter to the U.S. Probation Officer for approval; if any visits to church are permitted, Mr. Torres must be accompanied by one or both of his parents at all times.
- Mr. Torres shall report to the U.S. Probation Office as scheduled by the U.S. Probation Officer.
- Mr. Torres shall post a secured bond in the amount of $100,000.
- Mr. Torres shall surrender any passport to the U.S. Probation Office.
- Mr. Torres shall obtain no passport. Mr. Torres shall abide by the following restrictions on personal association, place of abode, or travel: he shall reside at the address of record; he shall not leave the jurisdiction of this district without first obtaining written permission from the Court.
- Mr. Torres shall avoid all contact with victims or witnesses.
- Mr. Torres shall undergo medical or psychiatric treatment as deemed necessary by the U.S. Probation Officer.
- Mr. Torres shall refrain from possessing firearms, destructive devices, or other dangerous weapons.
- Mr. Torres shall refrain from excessive use of alcohol.
- Mr. Torres shall refrain from the use or unlawful possession of any narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
- Mr. Torres shall submit to any method of drug testing required by the U.S. Probation Officer for determining whether he is using a prohibited substance.
- Mr. Torres shall participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the U.S. Probation Officer.
- Mr. Torres shall refrain from obstructing or attempting to obstruct or tamper with substance testing or electronic monitoring.
- Mr. Torres shall report, as soon as possible, to the U.S. Probation Office, any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.
- Mr. Torres shall not enter any airport or pier.
- Mr. Torres shall be subject to unannounced, unscheduled visits to the location of his home incarceration by the U.S. Probation Officer.

- Mr. Torres shall be subject to other forms of unannounced checks as determined by the U.S. Probation Officer to verify compliance with these conditions of release.
- Mr. Torres shall comply with any other conditions of release required by the U.S. Probation Officer.

## V. Government's Motion to Continue Detention Hearing

■ Still outstanding is the government's request (Docket No. 334) to continue the detention hearing in order to present a witness who can "potentially" identify Mr. Torres. Mr. Torres objects to the government's request (Docket No. 340) both on grounds that the government should not be granted additional time to investigate the case when the bail hearing was well-noticed, and because the government's language regarding the witness it seeks to present (a witness "who can potentially identify defendant") indicates that the witness has not actually identified Mr. Torres as one of the suspects.

The Court agrees. The defendant sought a *de novo* hearing on grounds of new evidence on December 8, 2008, and the bail hearing was set more than one month in advance. The government has no excuse for its failure to bring any and all evidence relevant to Mr. Torres' detention to the Court's attention at the *de novo* hearing; both parties had ample time to prepare, and one cannot be given more time just because a witness did not perform according to expectation. In fact, the government's sudden decision to bring in a previously unmentioned witness whose connection to the case was never specified and who is only "potentially" able to link Mr. Torres to the alleged incident looks like a fishing expedition following what was clearly an unexpected turn of events. The fact that the government's only witness was unable to identify the defendant is a situation for which the government ought to have prepared by bringing in all the evidence at its disposal.

The government carries a burden of persuasion throughout the inquiry into detention status and regardless of what evidence the defendant brings forth as a rebuttal. That the government brought only one witness to the *de novo* detention hearing, whether due to ill preparedness, neglect, or to the fact that no other evidence was available, cannot and ought not to be fixed by the Court. The motion to continue the detention hearing is **DENIED.**

## CONCLUSION

Therefore, for the foregoing reasons, Mr. Torres' motion to modify his detention order is **GRANTED.** Until Mr. Torres' parents are qualified as third party custodians by the Pretrial Services Division, and until all the conditions set by the Court are met, however, Mr. Torres will remain incarcerated. Once all the conditions of release are met, and the Court is so notified by the Probation Officer, Mr. Torres will be released and will be incarcerated in his parents' home pending trial. Because it is both untimely and vague, the government's motion to continue the detention hearing is **DENIED.**

**IT IS SO ORDERED.**