**UNITED STATES of America, Plaintiff,**

v.

**Hector I. RODRÍGUEZ–ROMERO, Defendant.**

**Crim. No. 13–805(DRD).**

United States District Court, D. Puerto Rico.

Signed May 13, 2014.

As Amended May 14, 2014.

Amanda C. Soto–Ortega, United States Attorney's Office, San Juan, PR, for Plaintiff.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. BACKGROUND

Pending before the Court is Defendant Hector I. Rodríguez–Romero's ("Defendant" or "Rodríguez") request for the Court to revisit the determination of the Honorable U.S. Magistrate Judge Marcos E. Lopez, entered on November 21, 2013 (Docket No. 10) after conducting a Bail Review Hearing, denying bail.

On November 6, 2013, the Grand Jury handed down a three count indictment (Docket No. 6) against Rodríguez charging several drug and weapons violations. Count One charges Defendant with possession with the intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1). Count Two charges Rodríguez with possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). Similarly, Count Three pertains to the possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).[1]

In denying Defendant's bail request, the Magistrate found that: (1) there was probable cause to believe that Rodríguez had committed an offense under 18 U.S.C. § 924(c); (2) Rodríguez had failed to rebut the presumption that no condition will reasonably assure the safety of the community; and (3) there is a serious risk that the Rodríguez will endanger the safety of another person or the community. *See* Docket No. 10. In arriving at this determination, the Magistrate Judge relied on the alleged facts that Defendant uses marijuana and cocaine regularly and that a search of his residence yielded nine plants of marijuana, two pistols and a shotgun for which Rodríguez did not have valid permits, a two-way radio, and a bullet-proof vest. *Id.*

On December 17, 2013, Defendant filed a *Motion for De Novo Review* (Docket No. 16) of the Magistrate Judge's determination arguing, *inter alias*, that the Magistrate failed to hold the government to its statutory burdens of proof. Defendant further argued that there is insufficient evidence to establish by clear and convincing evidence that Rodríguez presents a danger to the community. Additionally, Defendant contends that the Magistrate Judge erred in permitting the United States to proceed by proffer as opposed to live testimony.

On January 7, 2014, the United States filed its *Opposition to Defendant's Motion for De Novo Review* (Docket No. 19). Therein, the government stressed that there are no conditions or combination of conditions that will assure the safety of the community if Defendant is released on bail before trial. In addition, the government

---

**1.** At the *De Novo Hearing,* the United States proffered that Defendant is facing between 72 and 86 months should Defendant be convicted.

argued that under *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir.1987),[2] it is permissible to simply proffer the arresting officer's affidavit as evidence absent a showing that cross-examining the officer will undercut probable cause.

On January 24 and 31, 2014, the Court held a *De Novo Hearing* (Docket Nos. 26 and 28) where the Court entertained arguments from both sides as to whether Defendant should be held without bail pending trial. At the first hearing held on January 24th, the Court heard testimony from Vidal Rodríguez Gerena and Ana María Velázquez Camacho, both of which attested to Defendant's good moral character. At the second hearing, the Court, upon listening to the parties' final arguments, held in abeyance Defendant's bail request.

## II. BAIL REVIEW UNDER THE BAIL REFORM ACT

Where, as here, a magistrate judge's detention order is contested, the Court must consider the matter *de novo* under the guidelines set forth by the Bail Reform Act at 18 U.S.C. § 3142.[3] *United States v. Tortora*, 922 F.2d 880, 883 n. 4 (1st Cir. 1990); *see also United States v. Torres–Rosario*, 600 F.Supp.2d 327, 330 (D.P.R. 2009). The Court proceeds accordingly.

The Bail Reform Act sets forth four factors which the Court must weigh in determining whether pretrial detention is warranted. They are: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." *Tortora*, 922 F.2d at 884 (citing the factors outlined at 18 U.S.C. § 3142(g)(1)-(4)); *see also United States v. Gines Perez*, 152 F.Supp.2d 137, 148 n. 13 (D.P.R.2001); *Torres–Rosario*, 600 F.Supp.2d at 330.

However, under the Bail Reform Act, where a criminal defendant is charged with crimes that reach a predetermined threshold,[4] including those with which De-

---

**2.** The First Circuit case on point is *United States v. Acevedo–Ramos*, 755 F.2d 203, 207–08 (1st Cir.1985) (citing the House Judiciary Committee, H.R.Rep. No. 907, 91st Cong., 2d Sess. 182, 184 (1970)).

**3.** The Court remains cognizant that Rodríguez enjoys the presumption of innocence at this stage of the proceedings. *See Bull v. City & County of San Francisco*, 595 F.3d 964, 996 (9th Cir.2010) ("detainees still enjoy the presumption of innocence"). The presumption of innocence means that the fact "[t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt." *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006). Moreover, the Bail Reform Act explicitly provides that "[n]othing in this section shall be construed as modifying or limiting

the presumption of innocence." 18 U.S.C. § 3142(j). Although a pre-trial Defendant benefits from the presumption of innocence, detention may nevertheless be warranted as "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

**4.** Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
(B) an offense under section 924(c), 956(a), or 2332b of this title;

fendant is charged in the instant case,[5] a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3); *see also Gines Perez*, 152 F.Supp.2d at 147. The presumption, therefore, is that the criminal defendant poses a risk both of flight prior to prosecution and a risk of danger to the community. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985), *partially abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir.1990) (abrogating *Jessup* only as to the standard of appellate review); *see also Gines Perez*, 152 F.Supp.2d at 147. "We apply a preponderance of the evidence standard to the proof pertaining to flight risk, but clear and convincing evidence must be introduced to support the conclusion that a defendant's detainment prior to trial is necessary to ensure the safety of the community." *Torres–Rosario*, 600 F.Supp.2d at 330 n. 4; *See United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir.1991) (preponderance of the evidence to establish "risk of flight"); 18 U.S.C. § 3142(f)(requiring satisfaction of a "clear and convinc-ing" standard of proof as to dangerousness to the community as upheld by the U.S. Supreme Court in *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

Once triggered in the cases that reach the rebuttable presumption of "danger to the community" and "flight risk," the defendant may rebut the presumption by producing "conflicting evidence" to undercut the legislative purpose of the presumption as to the risks of danger and flight. *Id.* (outlining what is known as the "intermediate position").[6] The defendant is required to produce "some evidence" to the contrary. *O'Brien*, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Circuit Judge of the First Circuit Court of Appeals Steven Breyer, in *United States v. Jessup*, 757 F.2d at 382–383. The "intermediate position" adopted in *Jessup* requires a defendant to produce "conflicting evidence" as to "danger" and "flight"[7] and then the Court "determine[s] on which side the evidence preponderates." *Jessup*, 757 F.2d at 383 (citing *Wright v. State Accident Insurance Fund*, 289 Or.

---

(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;
(D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or
(E) an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title.
18 U.S.C. § 3142(e)(3).

5. The Court hereby revisits its prior ruling that the rebuttable presumption is inapplicable and concludes that the provision of the Bail Reform Act implicating the presumption of dangerousness is applicable to the case at bar, as Defendant was indicted under 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 3142(e)(3)(B); *United States v. English*, 629 F.3d 311, 322 (2d Cir.2011) (rebuttable presumption arises in cases under 18 U.S.C. § 924(c)); *United States v. Rodriguez–Adorno*, 606 F.Supp.2d 232, 233 n. 3 (D.P.R. 2009) (same). Said presumption is triggered independent of defendant's potential sentence contrary to subsections (A),(C), and (D) of § 3142(e)(3).

6. *Jessup*, 757 F.2d at 383 (noting that "the House of Judiciary adopted this sort of 'intermediate position'....").

7. *Jessup*, 757 F.2d at 383 (citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L.Rev. 527 (1978)).

323, 613 P.2d 755, 759–60 (1980)). The Court must weigh any evidence produced by the defendant against the presumption and evidence produced by the government in order to determine whether detention without bail is appropriate. *Gines Perez,* 152 F.Supp.2d at 147 (citing *Jessup,* 757 F.2d at 384); *see also United States v. Villanueva–Rodriguez,* 190 F.Supp.2d 257, 259 (D.P.R.2002). Thus, while the burden of persuasion always rests with the United States, the burden of production shifts to the defendant once the presumption is activated. *See Jessup,* 757 F.2d at 384.

The presumption has a "significant practical effect." *Jessup,* 757 F.2d at 384.[8] The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. However, once the presumption is triggered, the defendant is required to carry the burden of production. *United States v. Jessup,* 757 F.2d at 380–384. The presumption created is that "... no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. § 3142(e). The presumption created is, therefore, of "flight risk" and "danger" to the community. *Jessup,* 757 F.2d at 381.

Even after a defendant has produced evidence to rebut the presumption as to both danger to the community and risk of flight, "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendants' case resembles the Congressional paradigm, *Jessup,* 757 F.2d at 387—to be considered with other relevant factors." *United States v. Palmer–Contreras,* 835 F.2d 15, 17 (1st Cir.1987). Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including ... character, physical and mental condition, family history ... past conduct" and the "danger posed to the community" by his release. *Id.*

### III. ANALYSIS

As an initial matter, the Court states that offenses which carry a maximum punishment of ten years or more authorize the rebuttable presumption of detention without bail. See 18 U.S.C. § 3142(e)(3)(C). Although the instant case is not one carrying at least a ten year sentence, Rodríguez is charged with a violation of 18 U.S.C. § 924(c), which clearly sets forth under the Bail Reform Act the rebuttable presumption, independent of a defendant's potential

---

**8.** In *United States v. O'Brien,* 895 F.2d at 814, the Circuit Court abrogated *Jessup* as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in *United States v. Bayko,* 774 F.2d 516, 520 (1st Cir.1985), which is "an independent review ... tempered by deference to the district court's first-hand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in *Jessup,* 757 F.2d at 387–388, *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985), *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985), and *United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985). *O'Brien,* however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of *Jessup* stated herein applicable for bail determinations at District Court level. 895 F.2d at 815.

prison sentence, as to both dangerousness and flight under 18 U.S.C. § 3142(e)(3)(c).

As stated previously, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on a weapon used in furtherance of a drug transaction. 18 U.S.C. § 924(c). The Court must, therefore, analyze the statutory factors required under the law. The Court proceeds in seriatim fashion to examine the statutory criteria at 18 U.S.C. § 3142(g)(1), (2), (3), (4) and then proceeds to conclude whether the evidence preponderates towards detention or bail.[9]

The first two factors, which the Court will consider in conjunction, pertain to the nature and circumstances surrounding the offense and the weight of the evidence as to guilt or innocence. Thus, it is imperative for the Court to analyze the nature and circumstances surrounding the Defendant's arrest and the evidence obtained by the arresting officers at Defendant's residence.

In the case at bar, Defendant is charged with possession of narcotics with the intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a prohibited person, *charges which are all unquestionably quite serious and violent in nature.* At the time of Defendant's arrest, the arresting officers retrieved two Glock pistols with expired registrations and one shotgun without any prior registration from various places within Defendant's residence.[10] In addition, ammunition for each of the three

weapons was also obtained,[11] along with a bulletproof vest, two rifle scopes, two two-way radios, two large Ziplock bags full of small bags of marijuana, and drug paraphernalia. Furthermore, Defendant seems to have been housing a small laboratory in an enclosure near the back of his home. Therein, the agents found nine plants of marijuana and an air-conditioning system used to facilitate the marijuana cultivation process.

Defendant admitted to the arresting agents that he is a habitual user of marijuana and that, on occasion, also uses cocaine. It is further uncontested that the Defendant did not have any valid permits for any of the three firearms retrieved from his residence. The Court emphasizes that the shotgun was never registered. Although the Court is aware that Defendant did have a valid weapons permit two years prior to his arrest for the two Glock pistols, the fact that Defendant continued possessing said weapons after the permits had expired is sufficient to violate the law, as he is a prohibited person by his own admission of being a drug addict. *See* 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

Viewing all of the evidence obtained from Defendant's residence coupled with his admission of being a habitual drug user, the Court finds that the evidence against Rodríguez–Romero is overwhelming. First, Defendant was unlawfully possessing three weapons at the time of his arrest, strategically placing them in different rooms throughout his home. Second,

---

**9.** As the Court previously determined during the *De Novo Hearing* that Defendant was not a "flight risk" given the fact that he does not own a passport and last traveled outside of Puerto Rico six years before his arrest, the Court will focus its analysis solely on whether Defendant poses a danger to the community.

**10.** Defendant's objection to the admissibility of Agent Angel Ortiz's proffer is misguided, as

the government does not need to present live testimony at this stage of the proceedings. *See* 18 U.S.C. § 3142(f); *United States v. Acevedo–Ramos,* 755 F.2d at 207–08.

**11.** Specifically, a search of Defendant's residence yielded thirty-three (33) .45 caliber rounds, thirty-five (35) .40 caliber rounds, and twenty-five (25) shotgun shells.

Rodríguez–Romero admitted to being an active marijuana and cocaine user, making him a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2), as logic dictates that individuals who use illegal narcotics lack the requisite mental capacity/restraint to safely possess firearms. Lastly, and of critical importance, is the fact that Defendant was growing marijuana in his home. Although the Court will refrain from opining one way or another whether the quantity retrieved is sufficient to convict Defendant of possession with the intent to distribute, we nonetheless stress that the presence of loaded firearms in the same place as substantial amounts of marijuana and drug paraphernalia heavily tips the scale in the government's favor as to the first two factors.

The third factor which the Court ought to consider pertains to the history and characteristics of the accused, including his past conduct. The third factor weighs slightly in the accused's favor, as Rodríguez–Romero has never been convicted of any crimes. However, Defendant's history is blemished substantially as a result of his confessed addiction to marijuana and cocaine and by the admitted possession of an unregistered shotgun and a bulletproof vest. The defense offered two witnesses, Vidal Rodríguez Gerena and Ana María Velázquez Camacho, in support of their contention that Defendant is not a threat to the community.

The first witness presented was Vidal Rodríguez, the Defendant's grandfather, who offered one of his properties, worth approximately $103,000, as a guarantee of bail. Rodríguez testified that the Defendant was a serious individual and that he would personally be watching over him should the Court grant bail.

The second witness was Defendant's common law wife, Ana María Velázquez Camacho, who testified that Rodríguez–Romero is a caring and loving father and an excellent husband. Velázquez Camacho further stated that the Defendant does not have a U.S. Passport and that in the twelve years they have been together she has never seen Rodríguez–Romero act in a violent manner.

Nevertheless, the Court remains quite skeptical about Velázquez Camacho's credibility after hearing her testimony. For example, Velázquez Camacho asserted that she was unaware that there were weapons inside her home, when the evidence clearly evinces that the Defendant had an expired permit as to two of the weapons and an unregistered shotgun, all in easily accessible locations throughout the residence. Further, Velázquez Camacho insisted never having seen Defendant smoke marijuana, yet he admitted to smoking marijuana on a daily basis for approximately eight to ten years. Additionally, and most critical, is the fact that two plastic bags full of marijuana were retrieved from the bathroom allegedly used by Velázquez Camacho and her children, yet Velázquez Camacho testified not knowing of the presence of the bags. In a similar fashion, Velázquez Camacho admitted to frequenting the office room used by Defendant, yet never noticed that her husband kept a shotgun, a bulletproof vest, and two two-way radios inside said room. Velázquez Camacho also stated that she ignored the presence of the weapons yet when confronted by the Court as to the shotgun she alleged that Defendant used it to hunt at the federal reserve of El Yunque, which is prohibited under 36 C.F.R. § 261.8, as cited by the United States. Thus, Velázquez Camacho denies having knowledge of the presence of the firearms in her residence, yet somehow knew that Defendant did in fact possess a shotgun used for hunting purposes. Defense counsel went on to assert that Defendant was hunting within his

own residence, an assertion lacking credibility, as Defendant does not have a permit to use the premises in question as a hunting ground nor to possess and carry a shotgun, a weapon rarely used for hunting. Though Defendant claims that he used his shotgun to go hunting, the Court has serious doubts about whether shotguns, which have broad spectrums and limited range, are used to hunt small game. Nonetheless, we emphasize that individuals cannot use a weapon, to hunt or otherwise, for which they do not have a valid permit. Further,

Lastly, Velázquez Camacho attempts to persuade the Court that she was unaware that her husband was growing marijuana in their backyard, stressing that she believed her husband simply kept his tools inside the shed, an averment which the Court is hard-pressed to believe. *See* Docket No. 33–1, at 8. As the Hon. Raul Serrano Geyls, a highly acclaimed Puerto Rico Supreme Court Justice, sagaciously stated: "We judges should not, after all, be so naïve as to believe statements which no one else would believe." *The People of Puerto Rico v. Luciano Arroyo,* 83 P.R.R. 551, 561 (1961).

Turning to the fourth and final factor in our analysis, the nature and gravity of the danger posed by the person's release, the Court finds by clear and convincing evidence that Defendant poses a danger to the community should bail be granted. *See Salerno,* 481 U.S. at 750, 107 S.Ct. 2095. Although Rodríguez–Romero has a clean criminal record, his actions, particularly in the presence of his two minor children, is troubling to say the least. Not only did the Defendant cultivate and maintain marijuana inside his residence, but he also kept three loaded firearms within his children's reach. Also worrisome is the presence of a bulletproof vest inside De-

fendant's home, especially one with a removed serial number.

Accordingly, the Court agrees with Magistrate Judge Lopez's determination that Defendant poses a safety threat to the community by "clear and convincing" evidence under *Salerno,* 481 U.S. at 750, 107 S.Ct. 2095, and, therefore, **determines that Defendant is to be held without bail until trial.**

## IV. CONCLUSION

After carefully examining all the evidence and the pertinent factors, the Court finds that the Defendant has failed to rebut the presumption of presenting a danger to the community. Defendant cannot make a reasonable assurance that he can satisfy the criteria of "community safety" as required under *Tortora,* 922 F.2d at 892. It is evident to the Court that, based on the government's proffer regarding the quantity of marijuana found at the residence, including the nine plants Defendant was cultivating in his backyard, coupled with the two two-way radios, the bulletproof vest lacking a serial number, and the three weapons retrieved (two Glocks with expired licenses and one unregistered shotgun), along with the pretextual reasons provided by Defendant regarding his reasons for allegedly possessing a shotgun,[12] demonstrates that the weapons retrieved from Defendant's home were used in furtherance of a drug trafficking crime. Hence, Defendant Hector I. Rodríguez–Romero is hereby ordered to remain **DETAINED WITHOUT BOND** pending trial.

**IT IS SO ORDERED.**

---

12. Hunting in a federally protected forest or    hunting on the grounds of his residence.