**UNITED STATES of America,**

v.

**Robert PIERCE, Defendant.**

**No. Crim. 00–40013–NMG.**

United States District Court,
D. Massachusetts.

Aug. 2, 2000.

James P. Duggan, Botson, MA, for Robert Pierce.

David H. Hennessy, Worcester, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Defendant, Robert Pierce ("Pierce"), seeks review of an order of detention pending trial issued by Magistrate Judge Charles B. Swartwood III. In fact, defendant's motion requests a "hearing" to review the Magistrate Judge's Order. Section 3145(b) of Title 18 does not provide for a hearing as a matter of right and this Court declines to grant one. Instead, it treats defendant's pleading as a motion to revoke or amend the detention order and, after review, denies the motion.

### I. Background

The following facts are taken from the Order of Magistrate Judge Swartwood entered on June 2, 2000. They are, apparently, uncontested by Pierce and, for the purposes of this Memorandum and Order, are adopted by the Court.

Pierce was part of a conspiracy to distribute marijuana. To promote that enterprise, Pierce, co-defendants Charles F. Roy, Jr. ("Roy") and Timothy Gorman ("Gorman") and another man, Christopher Borelli ("Borelli") attempted to rob a marijuana supplier named William Bergeron ("Bergeron") in Woonsocket, Rhode Pierce waited outside at the wheel of the getaway car with the engine running. After the robbery, Pierce drove Gorman to Milford–Whitinsville hospital for treatment of a gun shot wound to Gorman's leg that he suffered during a scuffle with Bergeron.

On March 24, 2000, Borelli was served with a grand jury subpoena. At that time, Roy was incarcerated on other charges at the Worcester County House of Correction. Roy asked an individual who, unbeknownst to him was a DEA confidential source ("CS"), to arrange a meeting with Pierce and Gorman at the CS's residence to discuss Borelli's prospective grand jury appearance. At that meeting, Pierce

spoke by telephone with Roy and asked him what to do about Borelli's subpoena.

On March 28, 2000, the day before Borelli was scheduled to appear before the grand jury, Pierce, Gorman and Roy met with Borelli at the Worcester County House of Correction. During that meeting, Roy asked Borelli to lie to the grand jury. The next day, Borelli refused to testify before the grand jury on Fifth Amendment grounds and appeared to be afraid.

## II. Discussion

When a district court reviews the findings of a magistrate judge with respect to pretrial detention, it should engage in *de novo* review of the contested order. *United States v. Tortora*, 922 F.2d 880, 883 n. 4 (1st Cir.1990).

Under 18 U.S.C. § 3142(e), a judicial officer may detain a person pending trial:

> If, after a hearing pursuant to [§ 3142(f) ], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community....

To detain a defendant under such circumstances, the government must demonstrate that the defendant poses a danger to the community by clear and convincing evidence and/or that the defendant poses a risk of flight by a preponderance of the evidence. 18 U.S.C. § 3142(e)–(f).

### A. *Danger to the Community*

■ Pierce has not submitted a memorandum in support of his motion but rather has merely stated that the Magistrate Judge erred when he determined that there was no condition or combination of conditions which could assure the defendant's presence at trial. Presumably, Pierce would, if he submitted any argument, contend that he is not a danger to the community.

There is evidence that Pierce played an integral role in a planned robbery designed to steal, and later distribute marijuana, a robbery in which it was foreseeable that violence would result. Moreover, as the Magistrate Judge emphasized, when a witness to that robbery, Borelli, was subpoenaed, Pierce allegedly joined in an effort to influence him to lie to a duly constituted grand jury.

Accordingly, the finding of the Magistrate Judge that there are no conditions or combination of conditions that will assure the safety of the community if Pierce were released was not erroneous.

### B. *Risk of Flight*

Again, Pierce submits no argument or evidence that he is not a flight risk in support of his motion for review of the order of detention. If he had so argued, presumably Pierce would assert that he is not a risk of flight if he were released pending trial.

To the contrary, Pierce does pose a risk of flight for several reasons. First, he has an extremely strong incentive to flee based upon the length of the prison term he faces under the charges pending against him and the likelihood of his conviction. The government has recorded Pierce on an audio tape admitting that he was ready at the wheel of the getaway car at the robbery with the engine running. Hospital records also indicate that Pierce accompanied Gorman to the hospital after Gorman was shot and thereafter Pierce offered to sell marijuana to the CS.

Second, there is evidence that Pierce committed certain indicted offenses, specifically a conspiracy to distribute marijuana and witness tampering, while on Probation for possession of marijuana. Thus, he has apparently demonstrated an unwillingness or an inability to abide by conditions of supervision. Moreover, such conduct, if proved, could result in a higher criminal history category, ultimately leading to a more lengthy sentence.

Finally, as the Magistrate Judge noted, Pierce lacks substantial ties with this district but maintains significant ties outside of it. In the past several years, Pierce has resided and worked in Florida where his mother lives and his driver's license was issued. By contrast, when he was arrested Pierce was residing with the family of co-defendant, Roy. Pierce has held only short-term jobs in Massachusetts, and has no wife, girlfriend or children here that might connect him with this district.

Given the above facts, this Court concludes that Pierce poses an unacceptable risk of flight which cannot be reasonably addressed with any condition or combination of conditions of release.

### ORDER

For the foregoing reasons, defendant's motion to review the Magistrate Judge's detention order and his request for a hearing (Docket No. 30) is hereby DENIED.

So ordered.

### ORDER ON GOVERNMENT'S MOTION FOR DETENTION

SWARTWOOD, United States Magistrate Judge.

#### I. *Nature of the Offense and the Government's Motion*

On May 10, 2000, an Indictment was returned, charging Robert Pierce ("Mr. Pierce") and others, in Count Four, with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846; in Count Five, with interstate travel in aid of racketeering enterprises in violation of 18 U.S.C. § 1952(a)(2) and aiding and abetting in violation of 18 U.S.C. § 2; in Count Six, with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting in violation of 18 U.S.C. § 2; and in Count Eight, with witness tampering in violation of 18 U.S.C. § 1512(b) and aiding and abetting in violation of 18 U.S.C. § 2.

At Mr. Pierce's initial appearance on May 12, 2000 in connection with this Indictment, the Government moved for a detention hearing pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Defendant is charged with a crime of violence) and (f)(2)(A) (risk of flight).

A hearing on the Government's motion for detention was held on May 17, 2000. At this hearing, Richard Guerard, Special Agent of the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Mr. Pierce's counsel.

#### II. *Findings of Fact*

1. In June 1999, the DEA received information from a confidential source ("CS") that s/he had regularly purchased marijuana from Charles F. Roy Jr., a/k/a "Chuckie" (Chuckie Roy). The marijuana purchased by the CS from Chuckie Roy was often delivered by Mr. Pierce.

2. On January 3, 2000, Mr. Pierce, with co-defendants Chuckie Roy and Timothy Gorman, made arrangements through Christopher Borelli to purchase marijuana from Billy Bergeron, who lived in a second floor apartment at 425 Providence Street, Woonsocket, Rhode Island. The CS later informed the DEA agents that prior to going to Woonsocket, Rhode Island to allegedly purchase marijuana from Mr. Bergeron, Messrs. Chuckie Roy, Gorman and Pierce had formulated a plan that involved them going from Milford, Massachusetts to Mr. Bergeron's apartment in Woonsocket, Rhode Island for the purpose of robbing Mr. Bergeron of an unknown quantity of marijuana.

3. On January 3, 2000, Messrs. Chuckie Roy, Gorman, Pierce and Borelli arrived at Mr. Bergeron's apartment building at 425 Providence Street, Woonsocket, Rhode Island. Messrs. Chuckie Roy and Borelli went up into the apartment to allegedly negotiate a marijuana purchase with Mr. Bergeron. Messrs. Gorman and Pierce remained with the car. When Chuckie Roy and Mr. Borelli en-

tered the apartment, Mr. Bergeron and his girlfriend were present. There followed some discussion concerning the purchase of marijuana and once those discussions concluded, Chuckie Roy said that he had to go down to his car to get money to purchase the marijuana. Chuckie Roy then left the apartment, leaving Mr. Borelli with Mr. Bergeron and his girlfriend in the apartment. Shortly after Chuckie Roy left the apartment, Mr. Bergeron made a statement to Mr. Borelli that he did not trust Chuckie Roy and thereupon, produced a loaded pistol with an obliterated serial number which he placed on the table. Meanwhile, Chuckie Roy went down to the car and instructed Mr. Gorman to return with him to the apartment and Mr. Pierce was to remain with the car.

4. Upon entering the apartment, Chuckie Roy saw the pistol on the table, grabbed it, engaged a bullet into the chamber and pointed it at Mr. Bergeron. A struggle ensued between Chuckie Roy and Mr. Bergeron and during that struggle Mr. Gorman, who was standing behind Chuckie Roy, pulled a knife to assist Chuckie Roy. During the struggle for the weapon, three shots were discharged, one of which hit Mr. Gorman in the left upper thigh/groin area.

5. On instructions from Chuckie Roy, Mr. Gorman grabbed Mr. Bergeron's marijuana and exited the apartment being chased by Mr. Bergeron. Chuckie Roy and Mr. Gorman then jumped into their car and Mr. Pierce drove them from the scene.

6. Later that day, Mr. Pierce drove Mr. Gorman to the Milford–Whitinsville Regional Hospital where his wound was treated. Mr. Gorman told medical personnel at the hospital that "it happened in Framingham" and that "it was a drive-by shooting".

7. As part of a follow-up investigation, DEA Agent Guerard served Mr. Borelli on March 24, 2000 with a Grand Jury subpoena for him to appear on March 29, 2000 to testify concerning the events of January 3, 2000.

8. On Sunday, March 26, 2000, a meeting was arranged at the CS's residence by Chuckie Roy who was then incarcerated at the Worcester County House of Correction. The purpose of the meeting was to discuss Mr. Borelli's Grand Jury subpoena. Surveillance was then established at the CS's residence and at 8:00 p.m., Mr. Pierce and an associate arrived for that meeting. Mr. Gorman was not present, but Mr. Pierce talked to Mr. Gorman on the telephone. Mr. Pierce's side of that conversation was recorded. Mr. Pierce was talking to Chuckie Roy who had called from the Worcester House of Correction. Mr. Pierce continually asked Chuckie Roy: "what do you want us to do? How do you want us to handle this? And we've got to find out what this kid [Borelli] is going to say."

9. Prior to Mr. Borelli testifying before the Grand Jury, he accompanied Messrs. Pierce, Gorman and his cousin, Mike Roy to the Worcester County House of Correction where they met with Chuckie Roy. This group of individuals were videotaped going into and exiting from the Worcester County House of Correction. During this meeting, Chuckie Roy told Mr. Borelli "to lie and say I wasn't there."

10. At Mr. Borelli's first appearance before the Grand Jury he appeared to be afraid and tense and refused to testify.

III. *Discussion of the Bail Reform Act*

■ Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C.

§ 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c) ] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in *United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. *See* 18 U.S.C. § 3142(f); *United States v. Jackson*, 823 F.2d 4–5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir.1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). *See also United States v. Patriarca*, 948 F.2d 789, 792–93 (1st Cir.1991). Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. *See* 18 U.S.C. § 3142(f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defen-

dant's pretrial release. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988).

■ In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the

community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

## IV. *Discussion of Whether Detention is Warranted*

### A. *Mr. Pierce's History and Characteristics*

Mr. Pierce was born on October 22, 1979 in Framingham, Massachusetts. At the time Mr. Pierce was arrested, he lived with the "Roy family" in Milford, Massachusetts and has resided for various periods of time with a roommate, his mother and an uncle in Tampa, Florida and on and off at other times in Milford, Massachusetts.

Mr. Pierce's father is deceased and his mother, with who he maintains frequent contact, resides in Tampa, Florida.

Mr. Pierce is single and has no children.

While Mr. Pierce resided in Florida, he was employed for approximately a year and following his move back to Milford, he has had several short-term jobs.

On March 9, 2000 Mr. Pierce was convicted of possession of a Class D controlled substance for which he received probation to September 8, 2000.

### B. *Nature of Offense; Weight of the Evidence; Rebuttable Presumption; Nature and Seriousness Of Danger Posed By Mr. Pierce's Release; and Risk of Flight*

#### 1. *Nature of the Offense*

Mr. Pierce is charged with a very serious offense and if he is found guilty, he could be incarcerated for a substantial period of time.

#### 2. *Weight of the Evidence*

The evidence presented at the detention hearing, although not overwhelming, supports the allegations contained in the Indictment that Mr. Pierce was involved in a conspiracy to sell marijuana, traveled across state lines for the purpose of stealing marijuana, possessed marijuana and intimidated a witness.

#### 3. *The Rebuttable Presumption*

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Pierce were released, or the appearance of Mr. Pierce as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Mr. Pierce is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. The Indictment in this case establishes probable cause for the charges against Mr. Pierce. Therefore, I find that under 18 U.S.C. § 3142(e), there is a rebuttable presump-

tion that no condition or combination of conditions will reasonably assure the appearance of Mr. Pierce or the safety of the community if Mr. Pierce were released. I find that Mr. Pierce has not produced nor proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. *United States v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir.1985); *United States v. Viers*, 637 F.Supp. 1343, 1351 (W.D.Ky.1986). Although I have determined that Mr. Pierce has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that Mr. Pierce poses a danger to the community and a risk of flight.

#### 4. *Whether Mr. Pierce Poses A Danger to the Community*

Mr. Pierce was engaged in a dangerous scheme that involved going across state lines to steal marijuana from a marijuana dealer. This scheme was going to be executed in the marijuana dealer's apartment and would most likely involve some use of force. Although Mr. Pierce did not personally participate in the confrontation that occurred in Mr. Bergeron's apartment, he certainly played a direct role in the overall scheme by staying with and operating the "getaway" car. Execution of this scheme eventually involved the discharge of a weapon, the wounding of a participant and the use of a knife. Considering these facts, I find that Mr. Pierce was involved in a crime of violence. Therefore, this fact, coupled with the fact that Mr. Pierce was involved in attempting to intimidate a witness, I find by clear and convincing evidence that there are no conditions or combination of conditions that will assure the safety of any person or persons in the community if Mr. Pierce were released.

#### 5. *Risk Of Flight*

At the time that Mr. Pierce and others visited Chuckie Roy in the Worcester County House of Correction, Mr. Pierce used his Florida drivers license with a Florida address as proof of identification. Additionally, Mr. Pierce's primary family ties are to Tampa, Florida, where he has resided for a great deal of time in the last several years. Therefore, considering Mr. Pierce's ties to Florida, his lack of ties to this District and the substantial sentence he faces if found guilty of the offenses charged in this Indictment, I find by a preponderance of the evidence that there are no conditions or combination of conditions that will assure Mr. Pierce's appearance in this Court as directed.

### V. *Order of Detention Pending Trial*

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Pierce be committed to the custody of the Attorney General, or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Pierce be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Pierce is detained and confined shall deliver Mr. Pierce to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

May 31, 2000.