UNITED STATES of America,
Plaintiff,

v.

Agustin RODRIGUEZ–ADORNO
[2], Defendant.

Criminal No. 07–248 (FAB).

United States District Court,
D. Puerto Rico.

April 3, 2009.

Julie B. Mosley, Vernon Benet Miles, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

**OPINION AND ORDER**

BESOSA, District Judge.

Defendant Agustin Rodriguez–Adorno ("Mr. Rodriguez" or "defendant") is charged, along with two other defendants, with the following crimes connected to an alleged carjacking on May 12, 2007: conspiracy to commit carjacking, aiding and abetting carjacking, and using a firearm in perpetuation of vehicle theft and murder.[1] Death is a possible sentence. At a detention hearing held pursuant to 18 U.S.C. § 3142(f) on June 18, 2007,[2] Magistrate Judge Bruce McGiverin found by a preponderance of the evidence that Mr. Rodriguez posed a flight risk and a danger to the community and granted the government's motion for detention without bail pending trial. (*Minute Entry for Proceedings*, Docket No. 6.) In his July 9, 2007 detention order (Docket No. 12) for Mr. Rodriguez, Magistrate Judge McGiverin further explained the findings upon which Mr. Rodriguez's detention was based. The magistrate judge concluded that there was probable cause to believe Mr. Rodriguez committed an offense [3] creating a statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. The magistrate judge also found that the defendant did not rebut that presumption, as allowed by statute. Finally, the magis-

trate judge found that there was a serious risk that Mr. Rodriguez would not appear. The magistrate judge summarized these findings as follows:

> The defendant has not presented sufficient facts or circumstances to overcome the statutory presumption. In addition, the defendant stands charged with a crime that carries a maximum penalty of life imprisonment or death, there is evidence that he is living beyond his reported income, and he has a history of use of controlled substances. The Court therefore concludes that he is a risk of flight.

On March 13, 2009, Mr. Rodriguez moved this Court for a *de novo* detention hearing "based upon the likelihood that the government will be unable to prove federal jurisdiction in this case." (*Defendant's Motion for De Novo Hearing*, Docket No. 351.) The government opposed the motion (Docket No. 359), and Mr. Rodriguez replied to the government's opposition (Docket 360).

For the following reasons, the Court **DENIES** the defendant's motion for a *de novo* detention hearing.

**I. Legal Standards**

**A. The Bail Reform Act and the Rebuttable Presumption**

The Bail Reform Act, 18 U.S.C. § 3142, governs the procedural and substantive rules for pretrial detention of defendants. Where there is probable cause to believe

---

1. Specifically, Mr. Rodriguez was indicted for violating 18 U.S.C. §§ 2119(3), 2, 371 and 924(c) and (j). (*Superseding Indictment*, Docket No. 51.)

2. Defendant's motion for a *de novo* detention hearing incorrectly reported the date of the initial detention hearing before Magistrate Judge McGiverin as June 18, 2006.

3. Magistrate Judge McGiverin specifically found that there was probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 18 U.S.C. § 2119 and that he committed an offense under 18 U.S.C. § 924(c), both of which create a rebuttable presumption of danger to the community and risk of flight under 18 U.S.C. § 3142.

that a defendant committed certain crimes pursuant to 18 U.S.C. § 3142(e), including those carrying the death penalty as a possible sentence, a rebuttable presumption arises that no conditions of release "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *See United States v. O'Brien*, 895 F.2d 810, 813 (1st Cir.1990).

■ To rebut the presumption, the defendant must produce "some evidence" to the contrary. *O'Brien*, 895 F.2d at 815 (citing *United States v. Jessup*, 757 F.2d 378, 381 (1st Cir.1985) (overruled on other grounds)); *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir.1991) (internal citations omitted). Nevertheless, the presumption remains in effect even when a defendant brings evidence forward in rebuttal. The evidence brought by the defendant merely serves as evidentiary weight to be considered by the court when determining the defendant's bail status; the government retains the burden throughout the inquiry to prove that no release conditions can reasonably assure the defendant's appearance. *Id; United States v. Palmer–Contreras*, 835 F.2d 15, 18 (1st Cir.1987) (*per curiam* ).[4]

### B. Standard of Review for a Detention Order

A court may reconsider a detention order at any time prior to trial if the judicial officer finds there to be information previously unavailable and finds that the new information bears on the determination of flight risk and danger to society. 18 U.S.C. § 3142(f)(2)(B); *Dillon*, 938 F.2d at 1415.

When reviewing a magistrate judge's pretrial detention order, a district court considers the matter *de novo* under the guidelines set forth by 18 U.S.C. § 3142. *See United States v. Alonso*, 832 F.Supp. 503, 504 (D.P.R.1993). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the "weight of evidence" against the defendant; (3) the history and characteristics of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by [the defendant's] release." 18 U.S.C. § 3142(g).

Determining what constitutes adequate detention is a "factbound" inquiry in which "no two defendants are likely to have the same pedigree or to occupy the same position." *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir.1990). "Detention determinations must be made individually and, in the final analysis, must be based on evidence which is before the court regarding the particular defendant." *Id.*

### II. Analysis

The Court in this case need not conduct a *de novo* detention hearing because the circumstances presented by Mr. Rodriguez do not warrant it. Mr. Rodriguez fails to trigger a reopening of his detention hearing because he brings no information previously unavailable to him bearing materially on his detention status within the meaning of the statute. Even assuming Mr. Rodriguez did bring "some evidence" to rebut the presumption of flight risk and danger to the community, thus satisfying his burden of production, the government in this case has met its ongoing burden of

---

**4.** A *preponderance of the evidence* standard applies to the proof pertaining to flight risk, but *clear and convincing evidence* must be introduced to support the conclusion that a defendant's detainment prior to trial is necessary to ensure the safety of the community. *United States v. Patriarca*, 948 F.2d 789, 792–93 (1st Cir.1991).

persuasion, convincing the Court that no condition or conditions of release will reasonably assure Mr. Rodriguez's appearance and the safety of the community. Additionally, Mr. Rodriguez fails to address the magistrate judge's specific finding that Mr. Rodriguez is a flight risk because "there is evidence that [Mr. Rodriguez] is living beyond his reported income, and [Mr. Rodriguez] has a history of use of controlled substances."

## A. Co–Defendant Giovanni Torres–Rosario's Detention Modification

Mr. Rodriguez seems to believe his motion to reopen his detention hearing will gain traction from this Court's recent decision to reopen the detention hearing of Mr. Rodriguez's codefendant, Mr. Giovanni Torres–Rosario ("Mr. Torres"), and the Court's subsequent opinion to modify Mr. Torres's detention status (Docket No. 346), thereby releasing Mr. Torres pending trial.[5] The timing of Mr. Rodriguez's motion (directly following the Court's modification of Mr. Torres's detention status, despite the fact that the basis for Mr. Rodriguez's arguments existed well before the Court issued its opinion and order regarding Mr. Torres) strongly suggests that Mr. Rodriguez expects the Court's reasoning in Mr. Torres's case to apply to his own. The situation presented by Mr. Torres, however, was both unique and extraordinary, and thus lends little support to Mr. Rodriguez's current motion.

Mr. Torres was arrested based upon the identification of a single eyewitness who was a passenger in the car at issue in the alleged carjacking.[6] (Docket No. 314, ¶ 4.) That eyewitness did not make the identification of Mr. Torres until September 19, 2007, 130 days after the incident, and the eyewitness described the assailant alleged by the government to be Mr. Torres as standing between 6 feet, 2 inches and 6 feet, 5 inches tall, while Mr. Torres is only 5 feet, 7 inches tall. *Id.* In addition to the single eyewitness, the government had a security video it alleged captured images of Mr. Torres near the scene of the incident.

Mr. Torres requested that he be able to present the results of a height analysis conducted by an expert in video and photographic forensics showing that Mr. Torres could not be the same person described by the government's only witness or the person alleged to be him in the security video. The Court determined that Mr. Torres's circumstances met the threshold for reopening a detention hearing: the evidence that Mr. Torres proffered was both unavailable to him at the time of the first detention hearing and relevant to his potential flight risk and danger to the community.

At the *de novo* detention hearing, Mr. Torres introduced expert testimony from Mr. Gerald B. Richards, qualified as an expert in forensic photography and video analysis.[7] Mr. Richards conducted a study comparing the heights of the suspect alleged by the government to be Mr. Torres and Mr. Torres himself. Mr. Richards concluded in his professional opinion and experience that it is "highly, highly unlikely" that Mr. Torres is the same person as the suspect alleged by the government to be Mr. Torres.

---

5. The Court modified Mr. Torres's detention status from detention prior to trial to house incarceration prior to trial.

6. In its opposition to Mr. Torres's motion for a *de novo* detention hearing, the government seemed to agree with Mr. Torres's description of the evidence leading to arrest, stating, "The identification of defendant was apparently based on the eyewitness' testimony." (Docket No. 316.)

7. At the hearing, the government stipulated to Mr. Richards's qualifications.

The government followed with the testimony of Mr. Juan Miranda–Montalvo ("Mr. Miranda"), the above-mentioned eyewitness who had identified Mr. Torres as one of the assailants in the alleged carjacking incident. After being shown the 6–photo array from which he identified Mr. Torres, Mr. Miranda was unable to identify Mr. Torres as the person he recalled being involved, despite Mr. Torres's presence in the courtroom, and despite the fact that Mr. Torres was the only person in the courtroom dressed in an inmate jumpsuit and the fact that he was sitting at the defense counsel table next to his attorneys.

In its opinion ordering modification of Mr. Torres's release, the Court found that the government failed to maintain its own burden of persuasion and, because the magistrate judge who presided over Mr. Torres's first detention hearing left no specific findings of fact for the Court to review, the Court was left with a measly record save for the exculpatory evidence brought by Mr. Torres and resulting from the examination of the government's only witness at Mr. Torres's *de novo* hearing. The Court determined the these circumstances were extraordinary.[8] Evidence that would normally go only to the "weight of evidence" factor in Mr. Torres's case actually influenced many other factors governing detention status as well, ultimately affecting Mr. Torres's incentive not to appear. The Court explained (Docket No. 346):

While certain statutory review factors, such as the "nature of the crime" and "weight of evidence" . . . may naturally implicate relevance to an inquiry of safety rather than one of appearance, numerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight. *See, e.g., United States v. Pierce,* 107 F.Supp.2d 126, 128 (D.Mass.2000). Facing the death penalty could surely create a motive to flee. Eliminating or reducing the possibility would therefore mitigate the risk. Because the evidence presented by Mr. Torres calls into question the very basis for the charge against him, this Court feels the risk of his flight has substantially decreased.

### B. Circumstances do Not Warrant *De Novo* Detention Hearing

 Unlike Mr. Torres's circumstances, Mr. Rodriguez's circumstances do not meet the statutory threshold for a *de novo* hearing. Mr. Torres proffered evidence that was unavailable to him at the time of his detention hearing before the magistrate judge. The expert had not conducted his study of the physical evidence linking Mr. Torres to the incident until after the original detention hearing. The expert's findings promised to alter the basis for Mr. Torres's detention.

The situation posed by Mr. Rodriguez's bail modification motion is markedly differ-

---

**8.** The Court stated in its opinion regarding Mr. Torres (Docket No. 346):

Mr. Torres's case is unusual. Typically, new evidence arises in rebuttal to a presumption favoring detention that relates to a defendant's character, bearing on either risk or dangerousness. Here, the evidence presented by Mr. Torres bears on his innocence, something we do not directly consider at this stage of the proceedings. Mr. Torres is a defendant in a case, however, where he faces extremely serious charges— charges which themselves create a presumption of risk—yet charges which Mr. Torres has shown are weakly substantiated. In such a case, casting doubt on the charge itself throws shadows in the direction of the entire detention order, given that the detention order was so highly grounded on that charge. In these unusual circumstances, where the defendant's rebuttal evidence in fact does cast doubt on the basis for his charge, the government's burden to maintain a level of proof that can persuade the Court of the need to detain the defendant is especially important.

ent. Mr. Rodriguez alleges that there is exculpatory information contained in evidence collected from the discovery process, and his own investigation. Yet what Mr. Rodriguez refers to as exculpatory evidence is his own analysis of the evidence. For example, Mr. Rodriguez describes images captured by a Subway restaurant security camera of the events at issue. He then initiates a lengthy analysis of the scenes in that video, concluding "this video evidence shows that this event was not part of an attempted carjacking ... what happened was an unfortunate 'road incident' that escalated into a fight and an unexpected retaliatory shooting." (Docket No. 351 at ¶ 22) In other words, instead of previously unavailable information or evidence brought to rebut the statutory presumption against him, Mr. Rodriguez brings forth passionate *arguments* regarding the credibility and sufficiency of evidence available through the regular, predictable process of discovery and defense investigation, such as video images, FBI reports, witness interviews and the like. Mr. Rodriguez exhaustively lays out all of the evidence currently known to him in the case and then systematically analyzes it, concluding that the government's case is weak.

This Court does not view such analytically based conclusions as evidence or information previously unavailable bearing materially on detention issues within the meaning of the statute. The statute governing detention determinations clearly limits the circumstances in which a judicial officer has discretion to consider reopening a detention hearing. As explained above, a hearing "may" be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material

bearing on the issue" of reasonable conditions of release. 18 U.S.C. 3142(f)(2)(B); *Dillon,* 938 F.2d at 1415. Mr. Rodriguez seems to view the statutory provision as giving movants carte blanche to reopen detention hearings whenever any evidence is uncovered bearing on the defendant's likelihood for conviction (as would then typically bear on the "weight of evidence factor"). In fact, Mr. Rodriguez's motion title itself indicates that his request to reopen his detention hearing is "based upon the likelihood that the government will be unable to prove federal jurisdiction in this case." (Docket No. 351.) This view of the statutory provision for detention review is simplistic.

Congress warned against detention hearings becoming de-facto mini-trials during which a defendant's guilt or likelihood of conviction is debated. *See United States v. Delker,* 757 F.2d 1390, 1395 (3rd Cir.1985). The Court's role in determining a defendant's detention status does not and should not include any analysis of the credibility or the sufficiency of evidence as it relates to potential for conviction, but only analyzes it as it relates to the factors enumerated by the governing statute. *See United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986)(Section 3142 "neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community")(internal quotes and citations omitted). It is also well established that detention hearings are not the proper forum for hashing out probable cause. A grand jury indictment is sufficient to establish probable cause for the purposes of detention. *United States v. Vargas,* 804 F.2d 157, 163 (1st Cir.1986).[9]

9. It is important to recall, however, that while a deciding court may treat an indictment as sufficient to establish probable cause, there

are circumstances in which the new information brought forward may call into question

In light of all of this, the Court cannot fathom that Congress intended the possibility of detention status modification to be twisted into an open invitation for parties to bring motions for detention review at any and every stage of trial in which new information arises regarding the weight and credibility of evidence in the case. Why? Because criminal trial practice itself involves a constant evolution, if not production, of information. Routine discovery procedures and investigative work such as witness interviews, taking statements, and subpoenaing documents, inevitably help parties uncover, clarify, and interpret the credibility and sufficiency of evidence in criminal cases, leading to development and refinement of case theories. The need for judicial efficiency and speed "necessarily makes arraignments, probable cause determinations, and bail hearings typically informal affairs, not substitutes for trial or even for discovery." *United States v. Acevedo–Ramos*, 755 F.2d 203, 206 (1st Cir.1985)(internal citations omitted).

If Congress intended detention hearings to become settings for evaluating the information inevitably accrued by discovery and the like, it would have required (or allowed) bail status to be revisited for each and every defendant following critical stages of discovery and other moments of evidentiary significance.[10] Congress has

not enacted such a statute. Instead, Congress limited the circumstances in which a District Court or other judicial officer has discretion to review *de novo* a detention. Because of those statutory limitations it is clear that Congress did not anticipate every defendant to move for a modification of his bail status, only those who can bring new evidence or information specifically relevant to that status.

Just what constitutes new evidence bearing on detention factors is fairly undeveloped in case law, nor does legislative history address the statutory vagueness. Many courts have interpreted strictly the statutory provision authorizing the reopening of a detention hearing, holding that hearings should not be reopened if the evidence proffered was available at the time of the hearing. *See Dillon*, 938 F.2d at 1415 (affirming district court's decision not to reopen detention hearing based on defendant's submission of affidavits from witnesses that could have been introduced at the original hearing); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir.1989)(affirming district court's decision not to reopen detention hearing based on proffered testimony of defendant's family members and a friend, because the proffered information was not new); *United States v. Peralta*, 849 F.2d 625, 626–627 (D.C.Cir.1988)(affirmed a district court de-

the basis for that indictment, and thus also cast doubt on the existence of probable cause. The Bail Reform Act permits the magistrate or trial judge to consider the "weight of the evidence" against the defendant. To make that determination, "it may well be necessary to open up the issue of probable cause since that too is a question of evidentiary weight." *United States v. Hurtado*, 779 F.2d 1467, 1479–80 (11th Cir.1985). Because the decision about how to weigh each of the factors remains within the discretion of the judicial officer making the review, it is the view of this Court that probable cause would arise only in extraordinary circumstances, such as that in which some new evidence brought by a defen-

dant so deeply hurt the government's case that probable cause could no longer be assured by the indictment alone. It is just this sort of situation that Mr. Rodriguez's co-defendant, Mr. Torres, brought to the Court's attention.

10. The Court imagines the absurdity resulting from a system permitting parties to have unlimited bites at the detention apple—detention hearings would be reopened every time a defendant learned of a credibility issue with a government witness, or each time a new statement was collected to support or undermine a theory of a case.

cision to reopen a detention hearing and detain the defendant on the basis of information not available at the initial hearing, to wit, the denial of a suppression motion which increased the likelihood of conviction).

Courts have not, however, shed much light on how to treat the kind of information brought forward by Mr. Rodriguez. What Mr. Rodriguez has brought to this Court's attention was not available to him at the time of his detention hearing before the magistrate judge. Nevertheless, while a movant may certainly (and usually will) become aware of new evidence as a result of discovery or investigation, and that evidence will almost certainly bear on at least the "weight of the evidence" and "nature of the charge" factors considered during a detention review, this Court believes that Congress intended new information to signify something other than a defendant's own evaluation of the strength of the case against him: truly changed circumstances, something unexpected, or a significant event. *See, e.g. Patriarca,* 948 F.2d at 794 (citing the occurrence of a "significant event" in the interval between the magistrate's detention order and the district court's release order); *United States v. Chen,* 820 F.Supp. 1205, 1209 (N.D.Cal., 1992) (citing the case's "surprising turns" as justification for the Court's reconsideration of the pretrial release order for certain defendants).

The district court has broad discretion about whether to conduct a supplementary evidentiary hearing as part of its *de novo* review. *U.S. v. Femia,* 983 F.2d 1046 (1st Cir.1983) (unpublished); *See also United States v. Moss,* 887 F.2d 333, 338 (1st Cir.1989); *United States v. Hurtado,* 779 F.2d 1467, 1479–80 (11th Cir.1985) (judicial officer has discretion to prevent detention hearings from becoming full-blown trials, but should exercise discretion with recognition that pretrial detention may restrict

liberty); *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (a statute calling for a *de novo* review does not require a *de novo* hearing). Furthermore, a district court should not hear new evidence at a detention hearing that does not qualify under section 3142(f). *United States v. Bergner,* 800 F.Supp. 659, 661–662 (N.D.Ind.1992). Based on the statutory analysis above, and given the discretion to do so, this Court will not reopen a detention hearing based on a defendant's view or interpretation of the evidence against him.

## C. The Government has Met It's Burden of Persuasion

■ Even were the Court to assume that Mr. Rodriguez has brought information previously unknown to him that bears materially on risk of flight and danger to the community, he has failed to rebut the presumption against him regarding both risks. As noted previously, evidence brought forth by a defendant to rebut the presumption against him does not eliminate that presumption, but operates as evidentiary weight for the Court's consideration while the government must constantly maintain its burden of persuasion. *See Dillon,* 938 F.2d at 1416.

The evidence brought forth in Mr. Rodriguez's motion directly address two statutory factors of detention review that most clearly concern a defendant's potential to be a danger to the community: the "weight of evidence" factor and the "nature of the charge" factor. Mr. Rodriguez argues that by showing the government's case to be weakly substantiated, he may thereby also indirectly address concerns about his potential to flee because the weight of the evidence and the seriousness of the charge can all influence a defendant's flight risk. Thus Mr. Rodriguez views evidence to expose problems in the

government's case as a sufficient, albeit indirect, attack on the presumption of detention based on risk of flight. Nevertheless, the Court has considered the position of both parties, read the papers submitted, and come to the conclusion that Mr. Rodriguez has failed to present any evidence that significantly alters the basis upon which the magistrate judge made his original order of detention regarding either risk or danger to the community.

Despite Mr. Rodriguez's efforts to characterize the evidence as exculpatory, the Court views the state of the evidence against him as intact and thus considers Mr. Rodriguez to pose a danger to the community were he to be released pending trial. Among other things, the evidence against Mr. Rodriguez includes three witnesses placing him at the scene of the crime, a surveillance video placing him at the scene of the crime, and DNA evidence from two clothing items recovered at the scene analyzed by separate laboratories. (Docket No. 359 at 9.) Both the government and Mr. Rodriguez present positions regarding the meaning of each piece of evidence, obviously arriving at opposite theories of the case. Based on entirely the same set of facts, the government concludes that "there is little question this was a carjacking, not a road incident" while the defendant argues that "no rational juror would find guilt of the essential elements of carjacking beyond a reasonable doubt." (Docket Nos. 359 and 351.)

As explored in depth above, detention review is not the proper forum for determining the likelihood of a defendant's conviction. Nevertheless, this is exactly what Mr. Rodriguez is asking the Court to do. The Court agrees with the government that the inferences that may be drawn from the available evidence are better "left to the jury." A defendant facing a statutory presumption has the burden of production, and it is the government, not the defendant, whose burden it is to persuade. Although the government allowed itself to get sucked into a contest over the correct interpretation of evidence, rather than engaging the Court in reasons why Mr. Rodriguez, specifically, poses a danger to the community or why Mr. Rodriguez, specifically, is a flight risk, it nevertheless demonstrated that, unlike the weight of evidence against Mr. Torres, which was extraordinarily feeble, the evidence against Mr. Rodriguez supports the allegations contained in the indictment that he was involved in a carjacking.

Regarding risk of flight, this Court agrees with Mr. Rodriguez that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight. As noted earlier, numerous courts have commented on the relationship between the charge, the weight of evidence, and a defendant's potential flight risk. *See, e.g., Pierce,* 107 F.Supp.2d at 128. Facing the death penalty could surely create a motive to flee. Eliminating or reducing the possibility would therefore mitigate the risk. *Id.* In Mr. Rodriguez's case, however, the weight of evidence factors heavily enough against him to convince the Court that his incentive to flee has not suddenly altered or diminished.[11]

Importantly, the magistrate judge memorialized his finding that Mr. Rodriguez poses a flight risk because he "is living beyond his reported income" and "has a

---

11. Additionally, some courts have declared the weight of evidence to be "the least important of the various factors" if the weight of evidence is used to buttress a decision to detain the defendant. *Chen,* 820 F.Supp. at 1207 (citing *United States v. Motamedi,* 767 F.2d 1403, 1406 (9th Cir.1985)) If the evidence against a defendant is weak (as it was in the case of Mr. Torres) that becomes an important factor favoring release. *Id.*

history of use of controlled substances." Congress has determined that persons charged with major drug offenses often have the foreign ties and resources necessary to escape with ease. *Jessup,* 757 F.2d at 380–86; *Palmer–Contreras,* 835 F.2d at 17–18. Congress intended magistrate judges to take account of the general rule that drug offenders pose a special risk of flight rather than focusing only upon the case before them. *United States v. Fortna,* 769 F.2d 243, 251 (5th Cir.1985).

Although Mr. Rodriguez is not accused here of a drug-related crime, the magistrate judge's specific finding that the defendant lives beyond his reported income and has a history of drug use raises the same concerns of flight risk that Congress identified among drug traffickers. Mr. Rodriguez's contention that a weakly substantiated case will mitigate his fear of being sentenced to death or a life in prison fails to address this specific flight risk concern contained in the available record for detention review. His abject failure to bring any evidence or information that could speak to this factual finding raises the same flags for this Court as it appears to have raised for the magistrate judge in the first detention hearing.

Based on the foregoing, the Court finds that the government has met its burden of presenting a risk of danger to the community by clear and convincing evidence, and risk of flight by a preponderance of the evidence.

## CONCLUSION

Accordingly, the Court finds that no condition or combination of conditions would ensure Mr. Rodriguez's consistent appearance or the safety of the community. Mr. Rodriguez's motion for a *de novo* detention hearing (Docket No. 351) is **DENIED,** and there will be no modification of his detention status.

**IT IS SO ORDERED.**