**UNITED STATES of America, Plaintiff,**

v.

**Sol L. FONTANES–OLIVO, Defendant.**

**Case No. 12–229 (M).**

United States District Court, D. Puerto Rico.

Feb. 24, 2012.

4. Document no. 30.

Charles R. Walsh, United States Attorney's Office, San Juan, PR, for Plaintiff.

Ramon A. Cestero, Jr., Ramon A. Cestero, Guaynabo, PR, Roberto Buso–Aboy, Buso Aboy Law Office, San Juan, PR, for Defendant.

### ORDER OF DETENTION

BRUCE J. McGIVERIN, United States Magistrate Judge.

Sol L. Fontanes–Olivo ("Fontanes"), the mayor of the Municipality of Barceloneta, was arrested pursuant to a criminal complaint charging him with accepting bribes in violation of 28 U.S.C. § 636(b)(1)(B). The United States moved for Fontanes's detention without bail pending trial pursuant to 18 U.S.C. § 3142(f)(2). A hearing was held on February 17, 2012, during which the court heard testimony, received exhibits, and heard arguments from counsel.

Under the Bail Reform Act, 18 U.S.C. § 3142, the government may seek detention on the grounds of danger to the community based on certain specified circumstances. In this case, the government argues that there is "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). Under § 3142(e), the court may order a defendant to be detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making this determination, the court must consider information concerning the nature and circumstances of the offense charged, the weight of the evidence against the accused, the history and characteristics of the defendant, and the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

During the detention hearing, the government presented the testimony of Special Agent Edward F. Figueroa, who played a recording of a telephone conversation between Fontanes and an unidentified male ("UM") that took place on February 14, 2012, the day before Fontanes's arrest. The government presented as an exhibit both the recording and a transcript of the conversation, which was in Spanish, and was granted seven days to file a certified English translation.

The conversation, in summary, starts with Fontanes telling the UM that he is cancelling a meeting set for the next day (February 15) because Fontanes heard rumors that the UM had met with the Grand Jury. The UM repeatedly denies that he met with the Grand Jury, and Fontanes

repeatedly states that he heard these rumors from several sources, including a number of attorneys. Fontanes twice states that he doesn't have "any proof against you" [the UM], and that he doubts the UM would say anything against him, because their "brotherhood" would not permit such a situation. Fontanes tells the UM that the newspaper El Vocero will run a story about the Grand Jury, and that the UM may see him handcuffed in the morning. At one point Fontanes says that he expects to be awakened by federal law enforcement breaking in "at dawn like they usually do." Fontanes tells the UM that he is canceling tomorrow's meeting so that the UM does not go to Barceloneta where he might be attacked, and that they would have to wait to see what news comes out so that they can make a strategy.

Fontanes and the UM then engage in the following exchange:

FONTANES: Because bringing rumors to the family—

UM: [*overlapping voices*] Of course.

FONTANES:—it would [*stuttering*] dri-drive them crazy. Okay?

UM: And, and to bring-and me arriving there with a rumor ... it is that-that some crazy person may take ...

FONTANES: Exactly, with a rumor any crazy person may-may get rid of you. Okay?

UM: Yes, sir.

FONTANES: Of my people. Okay?

UM: Yes.

FONTANES: You know my people are suicidal.

UM: Yes.

FONTANES: And there are some.

UM: Yes, sir.

FONTANES: Eh, but I do not want to expose you to that, man. Okay?

UM: Of course, of course, I appre-appreciate it.

[*Overlapping voices.*]

FONTANES: Given the friendship ["*hermandad,*" literally "brotherhood"] that unites us, that will continue to unite us ...

UM: Yes, sir.

FONTANES: ... I want to be straight with you.

UM: Uh-hum.

FONTANES: Because you have never failed me. Okay? And I hope you never fail me, because I have never failed you either.

UM: Correct, mayor.

FONTANES: Eh, so that, eh, I am canceling your meeting for tomorrow....

Fontanes later tells the UM that both of them have a problem because they both have several houses and will need to explain their sources of income. Fontanes says that his prestige, family, and existence are at stake, and that he will shoot himself. He says that he will not submit himself to the judicial process, that he will not attack anyone, but will defend himself, and that if he is cornered, he will shoot himself, which would be easier than spending a year in the courts.

I have carefully reviewed the recording and the transcript, and agree with the government that the conversation described above constitutes clear and convincing evidence of an attempt to intimidate a person Fontanes believes to be a potential witness. Although his tone is friendly throughout, and his words are couched in terms of friendship, Fontanes's intent during the call is unmistakable: to find out if the UM had testified before the Grand Jury, and to dissuade him from any future cooperation with authorities.

In doing, so, Fontanes employs tactics of intimidation. He repeatedly tells the UM he has heard rumors from multiple sources that the UM was interviewed by the Grand Jury. He appeals to his friendship and "brotherhood" with the UM, and says that the UM has "never failed" him, and that he "hope[s] you never will fail me," explicitly telling the UM what is expected of him. He reminds the UM that they are both in the same boat, insofar as they both have several houses for which they would have to explain sources of income, as if to remind the UM that he, too, would also have legal problems resulting from the investigation. Most strikingly, Fontanes says that "any crazy person," one of "his people," could "get rid of you" based on a rumor that the UM was cooperating with authorities. Although Fontanes throughout indicates that he wants nothing bad to befall the UM, the clear suggestion is that the UM's well-being depends on the rumors of the UM's cooperation not being true. Fontanes then tells the caller that he will not submit himself to the judicial process and will shoot himself if cornered, demonstrating that Fontanes is willing to consider extreme and violent measures. In short, the gist of the conversation is a not-so-veiled threat that bad things could happen to the UM if he does not stay quiet. Such intimidation of a potential witness warrants detention. *United States v. LaFontaine,* 210 F.3d 125, 134 (2d Cir. 2000).[1]

Notwithstanding the above, the defense points to certain factors under the Bail Reform Act that weigh in favor of release. First, Fontanes has no prior criminal record, no history of abusing controlled substances, and, most importantly, is a respected leader in his community, having served as Barceloneta's elected mayor for over twenty years. Moreover, the charged offense—bribery—is not one that ordinarily involves violence. The court agrees with the defense that these are factors that in most cases weigh strongly in favor of granting bail. In this case, however, they are outweighed by the clear evidence of the defendant's attempt to intimidate a person who the defendant believed to be a witness before the Grand Jury. Moreover, the court is particularly concerned about the defendant's statements that he intended to shoot himself rather than submit to the judicial process. Aside from the obvious concerns that these remarks raise as to Fontanes's personal well-being if released, these remarks convince me that it is highly unlikely that the defendant would comply with any conditions of release imposed by the court that are not to his liking. And the threats of suicide, coupled with an intent to intimidate potential witnesses, make for a volatile combination that the court would be irresponsible to ignore. Although the defense has proposed conditions of release, I find that none of the conditions suggested up to this point reasonably assure the court that the defendant, if released, would not persist in an attempt to intimidate potential witnesses in this case.

---

1. At the detention hearing, the parties did not specifically address the strength of the evidence of the bribery charge against Fontanes, instead focusing their arguments on the strength of the evidence of Fontanes's alleged intimidation of a potential witness. I note, however, that the affidavit in support of the criminal complaint refers to incriminating sound and video recordings of Fontanes and alleged co-conspirators, and I therefore find, solely for the purposes of deciding the present motion for detention, and in the absence of any contrary evidence, that the weight of the evidence against Fontanes is strong both as to the underlying bribery charge and the alleged attempt to intimidate a person he believed to be a witness.

The First Circuit has noted that the Bail Reform Act authorizes preventative detention in cases, like the present one, where the defendant attempts to injure or intimidate prospective witnesses. *United States v. Ploof,* 851 F.2d 7 (1st Cir.1988); *see also United States v. Pierce,* 107 F.Supp.2d 126 (D.Mass.2000). The Bail Reform Act's legislative history also emphasizes that defendants who have threatened potential witnesses pose a significant danger and should be detained pending trial. S.Rep. No. 98–225, at 7, 12, 15, 21, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3190, 3195, 3198, 3204. In this case, the totality of the evidence submitted require detention at this time.

For the reasons set forth above, the United States's motion for detention is hereby **GRANTED.**

**IT IS SO ORDERED.**